# RED "C" OIL MANUFACTURING COMPANY *v.* BOARD OF AGRICULTURE OF NORTH CAROLINA.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF NORTH CAROLINA.

No. 141. Argued December 21, 22, 1911.—Decided January 9, 1912.

This court will not lightly attribute improper motives to the lawmaking power, and will not, on a mere charge, regard a statute imposing inspection fees as an act to raise revenue. *Ellis* v. *United States*, 206 U. S. 246.

*Prima facie*, the charge for inspection in an act otherwise constitutional is reasonable. *Western Union Tel. Co.* v. *New Hope*, 187 U. S. 417.

The fact that oil inspection laws have been passed in a majority of the States shows that oil is a proper subject for police regulation.

In this case this court cannot conclude that the charge for inspecting oil, provided by the North Carolina oil inspection law of 1909, is

so seriously in excess of what is necessary for the object designed to be. effected as to justify the imputation of bad faith and the conclusion that the law is one for revenue and not merely for inspection. *Patapsco Guano Co.* v. *South Carolina,* 171 U. S. 354.

This court cannot determine what the actual operation of a statute will be after its enactment by going outside the record and taking judicial knowledge of what has happened since the filing of the transcript here.

If the inspection fees exacted under a state statute average largely more than enough to pay expenses, the presumption is that the State will reduce them to conform to the constitutional authority to impose fees solely to reimburse for expense of inspection.

What relief shall be accorded to one who may sustain injury by the failure of a State to protect his rights under the Constitution, cannot be determined before there has been such failure.

A requirement by the legislature that illuminating oils must be safe, pure, and afford a satisfactory light, establishes a sufficient primary standard, and remitting to the proper state board the establishment of rules and regulations to determine what oils measure up to those standards does not amount to a delegation of legislative power.

Where one complains that regulations promulgated under legislative authority by a state board are unreasonable and oppressive, he should seek relief by applying to that board to modify them.

A state police statute cannot be declared invalid because in the opinion of this court it does not accord with sound policy. The appeal for redress must be to the law-making power.

In the year 1909, North Carolina passed an act for the inspection, under the control of the Board of Agriculture, of all kerosene or other illuminating oils sold, or offered for sale, in the State. (March 8, 1909, Pub. Laws 1909, c. 554, p. 911.) The object of such inspection was' declared to be in order to determine the safety and value of such oils for illuminating purposes. A charge of one-half cent per gallon was fixed,' which the law declared should be paid to the commissioner of agriculture for the purpose of defraying expenses connected with the inspection, testing and analyzing of oils in the State. It was provided that the act should go into effect on July 1, 1909.

Two days after, viz., on July 3, 1909, this suit was commenced by the appellant, the Red "C" Oil Manufacturing Company, a corporation of the State of Maryland. The defendants named were the Board of Agriculture of North Carolina and the members of the board, and the object of the bill was to restrain the enforcement of the act referred to because it was charged to be not a proper exertion of the police power of the State, and, besides, was asserted to be repugnant to the Constitution of the United States.

The bill averred that the complainant was a large shipper of illuminating oils from the State of Maryland into the State of North Carolina, and that it did an extensive business in North Carolina in dealing in such oil. The provisions of the assailed act were set out *in extenso*, as also the terms of an act of the General Assembly approved on March 9, 1909 (Pub. Laws 1909, c. 441, p. 742), which forbade the collection of a tax upon dealers in oils, authorized by § 58 of the Revenue Act (March 8, 1909, Pub. Laws 1909, c. 438, p. 674), passed at the same session, "from any persons, dealers or corporations paying the taxes imposed under the inspection law enacted at the present session of the General Assembly, entitled 'An act to provide for the inspection of illuminating oils and fluids;' Provided, however, if the said Oil Inspection Act should be held invalid, section fifty-eight, Revenue Act, shall remain in full effect." In the preamble of this latter act it was recited that the "inspection tax" was much greater than the "tax" imposed under § 58 of the Revenue Act, and that "it is not the purpose of the General Assembly that the said taxes shall be cumulative." In addition to averring the appointment of inspectors by the Board of Agriculture, and the purpose of the board to enforce the collection of the inspection taxes, there were set forth the regulations adopted by the board under the authority of the statute.

The particulars by which it was asserted the statutory charge was shown to be unlawful may be thus summarized: The charge or "tax" was not for the purpose of defraying the cost of the inspection of oil, but was imposed for revenue upon the goods of complainant shipped into the State of North Carolina from the State of Maryland, and was hence in conflict with the commerce clause and the Fourteenth Amendment. The law, it was charged, was not a police regulation, since an inspection of oil "for value and luminosity" was not within the competency of legislative action, and the public safety was not concerned, since illuminating oils, as the result of modern methods of manufacture, were no longer explosive. The charge or tax, it was averred, was more than double the amount necessary for the inspection proposed, and would realize annually a surplus for the state treasury of more than $20,000. It was further charged that the act fixed no standard for the guidance of the Board of Agriculture, but in effect arbitrary powers were conferred upon the board, and, indeed, legislative authority had been delegated to it. The power thus conferred, it was also alleged, had been exerted in an arbitrary manner, and tests prescribed which were not necessary "in order to procure the safety of oil, to protect the people from the sale of oils which are dangerous." Certain of the regulations promulgated by the board were also assailed as being uncertain, unreasonable, illegal and oppressive.

On the filing of the bill an order was entered temporarily restraining the defendants from enforcing, as against the complainant, the statute and the rules and regulations of the board thereunder. The restraining order was subsequently amended by requiring the complainant, "pending the final determination of this cause," to "pay the one-half cent per gallon upon all illuminating oils sold by it in the State, as prescribed in said act." The defendants jointly and severally answered the bill, and took

issue upon all the matters alleged in the complaint. As regards the allegation that the inspection fee was unnecessarily high and would yield a large surplus over the expenses, the defendants said:

"Defendants say that they have made no estimate that any excess may be left after paying all the proper and necessary expenses of inspection, and these defendants say that they have no means of actually approximating the amount that the tax of one-half cent per gallon will yield, or the expenses of equipping and maintaining a competent inspection force and department. That the legislature thought that one-half cent a gallon would be necessary to pay the expenses of inspection, and these defendants are informed and believe, and therefore aver, that this is as low an inspection tax as there is to be found in any State having oil inspection laws, and lower than the taxes in a great many of the States. In some States there is a graduated scale of taxation of more than one-half cent for small quantities and less than one-half cent for large quantities. The said act expressly provides, in § 6, that the Commissioner of Agriculture shall include in his report to the General Assembly an account of the expenses under this act. The said act also provides that all money paid for inspection taxes shall be kept by the State Treasurer as a distinct fund to be styled, 'The Oil Inspection Fund.' At the end of one year, it can be seen exactly what the inspection costs and how much is paid for it by dealers in oil, and until it shall appear that said tax is excessive, a charge, to that effect, by complaint, is premature and ill-considered."

Both parties filed affidavits in support of their respective claims. The matter was heard upon a motion for an injunction upon the bill, answer and affidavits just referred to. Elaborately examining all the contentions, the court (172 Fed. Rep. 695), concluded that the complainant was not entitled to relief by injunction, and that

as respects the other relief asked the bill should be dismissed. A final decree was thereupon entered and this appeal was then taken.

*Mr. Robert W. Winston*, with whom *Mr. Chas. B. Aycock* was on the brief, for appellant:

This legislation violates the commerce clause.

The one great object in the adoption of the Constitution, was to keep the commercial intercourse among the States free from all invidious or partial restraint. *Gibbons* v. *Ogden*, 9 Wheat. 9.

By whatever name called, the attempt by a State to tax interstate commerce is void. *Corporation Tax Cases;* 220 U. S. 160; *Galveston Railroad* v. *Texas*, 210 U. S. 1.

The power to tax involves the power to destroy. *McCulloch* v. *Maryland*, 4 Wheat. 316; *Wilkerson* v. *Robner*, 140 U. S. 545.

An habitual and continual levying and collecting of taxes for inspection purposes far in excess of the amount necessary, and the covering of such taxes into a state treasury, is quite conclusive that the law was passed to raise revenue, and not for inspection purposes. *Postal Telegraph Cable Co.* v. *New Hope*, 192 U. S. 55.

Under the guise of inspection laws, a system of interstate tariff taxation has arisen and States have acted under a misconception of the *Patapsco Guano Case*, 171 U. S. 345, to such an extent that state governments are largely operated upon funds derived from illegal inspection laws. *Pabst Brewing Co.* v. *Crenshaw*, 198 U. S. 17.

As North Carolina manufactures no oil, it is proceeding under the guise of an inspection act to tax oils from other States. That the act does not on its face discriminate against oil from sister States makes no difference. Interstate commerce cannot be taxed at all. *Robbins* v. *Taxing District*, 120 U. S. 489; and see 135 Nor. Car. 520.

All statutes which relate to the same subject-matter

must be taken to be one system and so construed. Lord
Bacon, 3d Rule, Vol. 6, 382; *State* v. *Bell*, 3 Iredell, 509;
*State* v. *Melton*, Busbee's Law, 49.

This legislation was really a tax and an attempt to
raise larger revenue, and not for the purposes of inspec-
tion. This appears by the caption.

The preamble is the key to open the understanding of a
statute. *Coosaw Min. Co.* v. *South Carolina*, 144 U. S.
550; *United States* v. *Palmer*, 3 Wheat. 610.

A State cannot make a law designed to raise money
to support paupers, etc., an inspection law within the con-
stitutional meaning of that word by calling it so in the
title. *Postal Tel. Appeal*, 192 U. S. 55; *New York* v. *Com-
pagnie Gen. Trans. Co.*, 107 U. S. 759.

Grossly unreasonable inspection fees render the act
void and unmask the same, disclosing the real intention
to tax, to raise revenue, and not to inspect. *Passenger
Cases*, 7 How. 819. See for other instances where inspec-
tion laws have been declared revenue laws: *Brimmer* v.
*Redman*, 138 U. S. 79; *A. F. Co.* v. *Board of Agriculture*,
43 Fed. Rep. 610; *Hannibal R. R.* v. *Husen*, 95 U. S. 465.
*Postal Tel. Co. Case,* 192 U. S. 64; *Lochner* v. *New York*,
198 U. S. 45; *Stockard* v. *Morgan*, 185 U. S. 27.

North Carolina stands alone among the States of the
Union in not having a specified standard of safety for
oil, but has delegated this whole question to an auxiliary
board, to wit: The Board of Agriculture. A statute which
delegates a discretionary power to fix the rule by which
taxes shall be adopted, or rights measured, is unconstitu-
tional. Commerce Clause, Prentice and Egen, 311.

The legislature itself ought to lay down the test, which
ought to be defined by general rules. Freund, Police
Power, par. 649; *Field* v. *Clark*, 143 U. S. 649; *United
States* v. *Keokuk Railroad*, 45 Fed. Rep. 178.

The particular exercise of police power must tend in a
degree that is perceptible to secure some object of the

proper exercise of police power and the court must be able to see that the means adopted have a reasonable relation to the ends desired.   145 N. Y. 39.   See also *Gibbons* v. *Ogden*, 9 Wheat. 1.   If the act is intended to raise revenue it is not valid.   *Willis* v. *Standard Oil Co.*, 50 Minnesota, 280.

Where visibly poor quality affects neither health nor safety, the police power cannot interfere.   Freund, Police Power, § 279; see also 171 U. S. 18 and 30; *Harmon* v. *State*, 66 Oh. St. 249; *Matthews* v. *Murphey*, 23 Kentucky, 750; *Mayor of Baltimore* v. *Radecke*, 49 Maryland, 217; *In re Kollock*, 165 U. S. 526.

In *Buttfield* v. *Stranahan*, 192 U. S. 470, a primary standard for tea had been established by Congress; in *Patterson* v. *Kentucky*, 97 U. S. 501, the standard had been fixed by the legislature at which oil should flash; in *United States* v. *Grimaud*, 220 U. S. 506, Congress could not in the nature of things designate a fixed standard as to what lands might be grazed and hence delegated this duty to the commissioner.   For other cases in which delegation of general power has been held unconstitutional, see *C. W. & Z. R. Co.* v. *Clinton County*, 1 Oh. St. 88; *Adams* v. *Burgh*, 37 L. R. A. 157; *O'Neill* v. *American Fire Ins. Co.*, 26 L. R. A. 715; *Anderson* v. *Manchester Fire Ins. Co.*, 28 L. R. A. 609.

Except where authorized by the Constitution, as in respect to municipalities, the legislature cannot delegate legislative power; cannot confer on any body or person the power to determine what shall be law.   The legislature only shall determine this.   *State* v. *Young*, 29 Minnesota, 551; *Ex parte Cox*, 63 California, 21; *Port Eureka Harbor Comrs.* v. *Excelsior Redwood Co.*, 88 California, 491; *State, Marshall* v. *Cadwalader*, 36 N. J. L. 283; *State* v. *Armstrong*, 3 Sneed, 635; *Barto* v. *Himrod*, 8 N. Y. 483; *Kosciusko* v. *Slomberg*, 68 Mississippi, 469; *Hannibal & St. J. R. Co.* v. *Husen*, 95 U. S. 465; *Copcutt* v. *Yonkers Board of Health,*

140 N. Y. 1; *Re Smith,* 146 N. Y. 68; *State* v. *Speyer,* 67 Vermont, 502; *State* v. *Fond du Lac,* 63 Wisconsin, 234.

The act also violates the Fourteenth Amendment of Constitution.

*Mr. T. W. Bickett,* Attorney General of the State of North Carolina, for appellees:

The suggestion that, under the guise of doing one thing, the General Assembly is attempting to do another, will not be considered by this court. The courts are not disposed, neither are they at liberty, to impute improper motives to the lawmaking power of the Government. Black on Constitutional Law, § 41; *Atchinson &c. Ry. Co.* v. *Matthews,* 174 U. S. 96; *Florida &c. Ry. Co.* v. *Reynolds,* 183 U. S. 471; *Ellis* v. *United States,* 206 U. S. 246; *The Chinese Exclusion Case,* 130 U. S. 581.

Complainants themselves concede that if the act is intended in good faith to protect the public from danger or from being imposed upon, and is reasonably calculated to afford such protection, it is well within the police power of the State. *Plumley* v. *Massachusetts,* 155 U. S. 461; *Schollenberger* v. *Pennsylvania,* 171 U. S. 1; *McLean* v. *Denver &c. Ry.,* 203 U. S. 38; *Asbell* v. *Kansas,* 209 U. S. 257; *Oil Co.* v. *Crain,* 209 U. S. 211; *Waters-Pierce Oil Co.* v. *Deselms,* 212 U. S. 159.

Oil inspection laws have three times been before this court, and none of them has been condemned. *Patterson* v. *Kentucky,* 97 U. S. 501; *Oil Co.* v. *Crain,* 209 U. S. 211; *Waters-Pierce Oil Co.* v. *Deselms,* 212 U. S. 159.

In view of the opinions of oil expert chemists, and in view of the legislation of thirty-five States upon the subject, we submit that the contention that the inspection of illuminating oil is not a permissible exercise of the police power of the State finds its only support in the vigor of its asseveration.

The inspection tax of one-half cent per gallon is not

so excessive upon its face as to warrant the court in declaring it unconstitutional and void.   *McLean* v. *Denver & R. G. Ry.*, 203 U. S. 38.

No facts are set forth in the bill showing that the tax is excessive, and it seems that the .charge is based upon the alleged fact that the defendants estimate that they will be able to turn into the State Treasury $20,000 per year.   These allegations in the bill are met by a complete denial by the defendants, who say they have made no estimate at all.

The General Assembly cannot be charged with bad faith for adopting a tax as low as the lowest known to exist.   *Patapsco Guano Case,* 171 U. S. 354.

The inspection act is not unconstitutional and void as an attempt to delegate legislative powers to the Board of Agriculture.

The most enlightened and efficient governments on this earth are those in which the largest amount of discretion is vested in the constitutional departments of the Government; and the highly technical plea of the complainant in this case. is counter to the most advanced thought of the times.   6 Am. & Eng. Ency. of Law, 1021; *Buttfield* v. *Stranahan,* 192 U. S. 470, 532; *Locke's Appeal,* 13 Am. Rep. 720; *Wayman* v. *Southard,* 10 Wheat. 1; *Isenhour* v. *State,* 157 Indiana, 517; *St. Louis Railway Co.* v. *Taylor,* 210 U. S. 281; *Union Bridge Co.* v. *United States,* 204 U. S. 364.   This question has been thoroughly considered, and the authorities exhaustively reviewed, in the recent case of *United States* v. *Grimaud,* 220 U. S. 506, and appellees' contention sustained.

MR. CHIEF JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

In view of the full reference to and the review of decided cases made by the district judge in the opinion by

him delivered, we content ourselves with a comparatively brief discussion of the questions pressed at bar.

These all come to two propositions, which are thus stated by counsel:

"1. That the North Carolina Oil Inspection Act is unconstitutional and void in that, under the guise of exercising a police power, the General Assembly of North Carolina is really attempting to impose a revenue tax upon interstate commerce.

"2. That the said inspection act is unconstitutional, in that the General Assembly of North Carolina has attempted to delegate to the Board of Agriculture legislative powers."

As to the first proposition, we append in the margin a clear and adequate summary of the act made by the judge below (p. 696): [1]

---

[1] The act provides:

Sec. 1. "That all kerosene, or other illuminating oils, sold or offered for sale in this State, shall be subject to inspection and test to determine the safety and value for illuminating purposes." All manufacturers, wholesalers and jobbers, before selling or offering for sale, in this State, any kerosene, or other oil, for illuminating purposes, are required to file with the Commissioner of Agriculture a statement, showing that they desire to do business in the State, and to furnish the name or brand of the oil, or oils, which they desire to sell, with the names and address of the manufacturer, and that such oil will comply with the requirements of the law.

Sec. 2. Power is conferred upon the Commissioner of Agriculture to collect samples of any illuminating oil offered for sale in this State and have the same analyzed. The inspection of oil, as authorized by the act, is to be under the direction of the Board of Agriculture, which is authorized "to make all necessary rules and regulations for the inspection of such oil and to adopt standards of safety, purity or absence from objectionable substances and luminosity when not in conflict with this act, and which they may deem necessary to provide the people of the State with satisfactory illuminating oil."

The Board of Agriculture is required to appoint oil inspectors not exceeding, in number, one from each Congressional District, whose compensation shall not exceed one thousand dollars a year and ex-

The bill, as we have stated, was filed when the statute had been in force but two days and when of necessity the result of its operations was conjectural. We are asked now to hold that, although the General Assembly declared in the statute that the charge or tax authorized to be imposed was made "for the purpose of defraying the expenses connected with the inspection, testing and analyzing of oils in this State," the real purpose of the legislature was to levy a tax for revenue in violation of the commerce clause of the Constitution. Reading the statute as an entirety, or in connection with the supplemental legislation of March 9, 1909, we find no adequate reason for imputing to the General Assembly of North Carolina an attempt to do one thing under the guise or pretense of doing another. The mere designation of the exaction as a tax is not sufficient to warrant the deduction

penses. They are given power to examine all barrels, tanks, or other vessels containing kerosene or other illuminating oils, to see that they are properly tagged, and shall, as directed, collect and test samples of oil offered for sale in different sections of the State, and, when instructed, collect and send samples to the Department of Agriculture for examination.

Sᴇᴄ. 3. "For the purpose of defraying the expenses connected with the inspection, testing and analyzing oils in this State there shall be paid to the Commissioner a charge of one-half cent per gallon which payment shall be made before delivery to agents, dealers or consumers in this State." Provision is made for attaching to each barrel, tank, tank car, and other containers a tag or stamp to be furnished by the Commissioner of Agriculture showing that the tax has been paid. When oil is shipped in tank cars or other large containers, the manufacturer or jobber shall give notice to the Commissioner of Agriculture of every shipment, with the name and address of the person, company or corporation to whom it is sent, and the number of gallons, on the day the shipment is made.

Sᴇᴄ. 4. "All moneys received under the provisions of this act shall be paid into the State Treasury and kept as a distinct fund to be styled 'The Oil Inspection Fund.' All checks or orders in payment for tags or stamps shall be made payable to the State Treasurer. The Commissioner of Agriculture is authorized to draw out of said fund,

that the charge authorized for the inspection was not one really for such purpose. We cannot lightly attribute improper motives to the law-making power. *Florida &c. Ry. Co.* v. *Reynolds*, 183 U. S. 471; *Ellis* v. *United States*, 206 U. S. 246. Putting out of view, therefore, questions of motive, two subsidiary contentions remain, viz., *a*, that oil is not a proper subject of inspection; and *b*, that the tax in question is so excessive on its face as to be unconstitutional. The conceded fact that in thirty-five States of the Union oil inspection laws are in force is sufficient to adversely dispose of the first of these contentions. As stated by the court below (p. 705):

"While there is much diversity of opinion in respect to the danger of explosion from the use of kerosene oil and of the power to ascertain its illuminating capacity, it is evident that the question has not so far passed beyond the domain of debate, that the Legislature may not subject it

---

upon his warrant, such sums as may be necessary to pay all expenses incurred in connection with this act including salary to oil chemist, or chemists, cost of inspection, blanks," etc.

Sec. 5. "The State Treasurer shall, on the first day of June and December of each year turn into the general fund of the State all moneys of the oil fund in his hand in excess of the amount drawn out by the Commissioner of Agriculture for expenses."

Sec. 6. The Commissioner of Agriculture is required to include in his report to the General Assembly an account of the operations and expenses under the act.

Sec. 7. Provides: that, whenever complaint is made to the Department of Agriculture in regard to the illuminating qualities of any oil sold in this State, the Commissioner shall cause a sample of said oil or oils complained of to be procured, and have the same thoroughly analyzed and tested as to safety and illuminating qualities. If such analysis or other tests shall show that the oil is either unsafe or of inferior illuminating quality, its sale shall be forbidden and report of the result or results shall be sent to the party making the complaint and to the manufacturer of such oil.

The remaining sections prescribe penalties for violation of the provisions of the law. The act went into effect July 1, 1909.

to reasonable inspection before permitting its sale in the State.    The court cannot say that such a law has no reasonable relation to the public safety or welfare."

The contention that the tax is so excessive on its face as to conclusively evidence the unconstitutionality of the burden, if imposed as a mere inspection charge, is, we think, also without merit.    *Prima facie* the charge must be deemed to be reasonable.    *Western Union Telegraph Co.* v. *New Hope*, 187 U. S. 419.    Again, as said by the court below (p. 710):

"It appears from an examination of the various oil inspection laws in force in the United States that the charges for inspection vary from one-half to one and one-half cents per gallon, and that in States wherein population and other conditions are similar to those in this State the charge is about the same as that fixed by the act."

Looking at the elements which may have possibly entered into the calculation of the General Assembly as to what would be a reasonable inspection charge, we cannot, to quote from the opinion in the Patapsco Guano Case, *Patapsco Guano Co.* v. *North Carolina*, 171 U. S. 354, "conclude that the charge is so seriously in excess of what is necessary for the objects designed to be effected, as to justify the imputation of bad faith and change the character of the act."

In disposing of the contention just stated we are not at liberty to travel outside of the record and take judicial notice of the operation of the act since the transcript of record was filed in this court.    We here reiterate what was said in the case last cited (p. 354): "If the receipts are found to average largely more than enough to pay the expenses, the presumption would be that the legislature would moderate the charge."    If the trial made of the act establishes the fact to be as asserted, that the exaction in question is excessive, the presumption is that in the

orderly conduct of the public business of the State the
necessary correction will be made to cause the act to con-
form to the authority possessed, which is to impose a fee
solely to recompense the State for the expenses properly
incurred in enforcing the authorized inspection. What
relief should be awarded in the event the legislature of
North Carolina failed in its positive duty in this particular
is not a question open for consideration upon this record,
as no such failure of duty on the part of the legislature
had occurred or could possibly have happened when this
suit was commenced, a few days after the passage of the
act.

The remaining contention is that the act is repugnant
to the state constitution because it attempts to delegate
to the Board of Agriculture the exercise of legislative
powers. The legislative requirement was that the illu-
minating oils furnished in North Carolina should be safe,
pure and afford a satisfactory light, and it was left to the
Board of Agriculture to determine what oils would measure
up to these standards. We think a sufficient primary
standard was established, and that the claim that legis-
lative powers were delegated is untenable. *Buttfield* v.
*Stranahan*, 192 U. S. 470, 492; *Union Bridge Co.* v. *United
States*, 204 U. S. 364; *St. Louis, Iron Mountain & S. Ry.
Co.* v. *Taylor*, 210 U. S. 281; *United States* v. *Grimaud*, 220
U. S. 506.

We have not attempted to enumerate the objections
urged against the rules and regulations adopted by the
Board of Agriculture. The court below was clearly right
when it observed that if, as the complainant alleged, the
standard of safety fixed by the board was unreasonably
high, or the method of testing oil unsatisfactory and not
such as was in general use, or the regulations in other
respects were unjust or oppressive, it should seek relief
by applying to the Board of Agriculture to modify them.
A law cannot be declared invalid because in the opinion

of the court it does not accord with sound policy. The appeal for redress in such case must be to the law-making power.

*Decree affirmed without prejudice.*