## VALIDITY OF THE OIL INSPECTION STATUTE.

Common Pleas Court of Franklin County.

CHARLES J. CASTLE V. WILLIAM F. MASON ET AL.

Decided, February, 1914.

*Constitutional Law—Changing Conditions Do Not Render a Statute Invalid—Intent of the Legislature in Providing for Inspection Under the Police Power—Fees for Inspection in Excess of Cost Does Not Render a Statute Unconstitutional, When—Sections 844, et seq.*

1. Where conditions so change as to render a law without reason or effect, it is the province of the Legislature to repeal it, rather than for the courts to attempt to strike it from the statute books.
2. The fact that services under a legislative act are not performed or are not necessary, but the fees provided therefor are regularly collected, does not imply a legislative intent to provide a revenue measure by indirection, which would not stand the constitutional test were its real purpose disclosed.
3. Surplus revenue, derived from inspection under the police power and paid into the state treasury to the credit of the general revenue fund, are not so excessive and disproportionate to the expense involved as to render the measure invalid on that ground alone where the surplus is not more than two or three times the expense incurred.

*Wilson & Rector,* for plaintiff.
*T. S. Hogan,* Attorney-General, contra.

EVANS, J.

This case is submitted on demurrer of defendant to the petition. The demurrer raises the question of the constitutionality of the legislative act of May 9, 1908 (99 O. L., 513), entitled "An act to provide for the inspection of oils, gasoline and naptha."

The petition attacks said act to regulate the inspection of illuminating oil, gasoline and naptha, and claims that said act is not a proper exercise of the police power of the state of Ohio, for the reason that danger to life and property from the proper

use of illuminating oil, gasoline and naptha for years has not existed, and as now manufactured can not exist. The petition also, claims that said act is not one for the safety of the people of the state, but that it is in truth and in fact an act to raise revenue. That such is evidenced by the provisions of said act (Sections 853 and 865, General Code), providing that after payment of salaries due the state inspector of oils and his deputies and the expense incident to the conduct of his office, the state inspector of oils shall pay quarterly into the state treasury all moneys received by him under the provisions of said act, and more particularly by Section 865, General Code, which provides that gasoline and other products having a flash point less than that provided for illuminating oil shall be inspected by the state inspector of oils or his deputies, but providing no method of inspection nor standard of test to which it or any substance shall conform, but merely requiring the inspector to brand the same "dangerous," which service is of no benefit to the public and entirely unnecessary, but is made the means for collecting revenue.

The petition recites the fees collected under the provisions of said act from 1908 to 1913, together with the necessary expenses of said department. In 1908, the fees and revenue collected under said act amounted to $56,815.67, the expenses, $21,706.62. In 1909, the receipts were $88,037.25, the expenses, $36,999.91. In 1910, receipts were $99,523.55, the expenses, $39,548.65. In 1911, the receipts were $107,972.38, the expenses, $40,834.94. In 1912, the receipts were $123,693.71, the expenses, $42,576.73. Up to the date of filing the petition in 1913, the net amount of revenue paid in the state treasury under said act for said part of said year was $74,996.37.

It is also averred that all kerosene oil in commercial use, and particularly that of the plaintiff, is absolutely non-explosive, and that there is no necessity and no demand for the inspection thereof, to promote the safety of persons who are using or may use the same, and that no test is made of gasoline, naptha and like products.

It it claimed that said act, and the requirement that plaintiff and others engaged in similar business shall comply with the same, and with the rules and regulations prescribed by said department, are illegal, oppressive, and contrary to the spirit and letter of the fourteenth amendment of the Constitution of the United States, in that it abridges the privileges and immunities of the citizens of the United States, deprives citizens of property without due process of law, and denies persons equal protection of the laws. Also, of Article I, Section 10, Clause 2, of the Constitution of the United States, in laying duties on imports or exports in excess of what is necessary for executing its inspection laws. And that it, also, contravenes the Bill of Rights of the Constitution of Ohio, which guarantees the right of acquiring and protecting property, for equal protection and benefits, and the right of the people to be secure in their persons and possessions against unreasonable searches and seizures, and that private property shall ever be held inviolate. And that it contravenes Section 2, and Section 5, Article XII, in that said statute pretends to charge fees for inspection, when, in fact, the fees charged and collected are far in excess of the actual or necessary cost of such inspection, and produces a large amount of revenue to the state over and above such actual, reasonable or necessary cost of inspection.

The prayer is for general relief by injunction, and that said act be held unconstitutional and void.

The state oil inspection act prior to the act of April 2, 1906 (98 O. L., 359), as embodied in Section 394 *et seq.* of the Revised Statutes, made no provision for the payment into the state treasury of any of the fees and revenue collected under the provisions of the act then in force.

It provided (Section 396, Revised Statutes) that all such fees and revenue shall be paid to said inspectors. This was their compensation for their services paid to them in fees charged for such inspection.

In 1906 Sections 395 and 396, Revised Statutes, were repealed, and by an amendment of said sections, said oil inspectors were

placed on salaries, and it was provided that the state inspector of oils shall pay into the state treasury, quarterly, all moneys received by him directly or through deputy inspectors under said act after paying the salaries and the expenses enumerated therein.

The act under consideration, being the act of 1908 (99 O. L., 513), contains the same provision as to salaries, and as to paying into the state treasury from fees and revenue under said act, in excess of said salaries and expenses, and, also, enacted Section 13 thereof, for the inspection of gasoline or like substances having a lower flash test than provided for illuminating oils, which, as above stated, is referred to in the petition.

It can not be seriously questioned but that the state oil inspection act prior to the amendment thereof by the legislative act of April 2, 1906, was clearly a police regulation, and that such was the legislative intent, for under the provisions of said act no part of the fees and revenues derived therefrom was paid, or intended to be paid, into the state treasury.

Do the legislative acts of 1906, and of 1908, which abolishes compensation in fees of said state oil inspectors, and instead thereof places said inspectors upon fixed salaries, and provides for the payment by said oil inspectors into the state treasury of all fees and revenue derived from said inspections under said act after payment of salaries and expenses therein provided, change the character of said measure from that of a license under the police power, into an act for providing revenue, and thereby a taxing measure, and was such the intention of the Legislature?

The claim that said act to regulate the inspection of illuminating oil, gasoline and naptha is not a proper exercise of the police power of the state, is not a question that, under the circumstances of this case from the facts pleaded, should properly rest for determination by the courts.

The reason alleged in the petition why such regulation is not a proper exercise of police power, is that danger to life and property from the proper use of illuminating oil, gasoline and

naptha does not now, and has not for many years, existed. That when inspection laws were first enacted the danger against which the law provided was the inclusion in the oil for illuminating purposes of a portion of benzine or naptha, by reason of the fact that at that time the price of illuminating oil was much higher than the price of gasoline, naptha and benzine; that, at present and for many years past the price of volatile constituents of petroleum has been two to three times that of illuminating oil, and therefore all such volatile portions are carefully separated from the illuminating oil in manufacture, and the former danger provided against does not now exist.

It can not be presumed that the conditions may not again change, and the demand for illuminating oil raise the price in excess of that of such volatile constituents. To infer that such a legislative act is intended as a revenue measure because of such changed conditions, if exercised by the courts, and the act declared invalid, would be predicating a decree upon conditions existing at the time of the decree, but which by a reversal of the conditions, which may occur at any time, such inference could not be drawn, and by reason of such reversed conditions the act would be valid.

I am of the opinion that it is properly the province of the General Assembly to repeal or annul its statutes whenever the necessity for so doing arises, and that the courts can not draw an inference of the legislative intent, and invalidate a legislative act, under circumstances such as we have in this case, because the Legislature has as yet passed no act recognizing such changed conditions.

Besides, adjudicated cases hold that courts will accept the determination of the legisative bodies as to the necessity for the regulation of the sale of such volatile by-products, and will not inquire into the necessity for such regulation.

In *Red "C" Oil Mfg. Co.* v. *Board of Agriculture*, 222 U. S., 380, the court say, that as to the contention that oil is not a proper subject of inspection, the court can not say that such a law has no reasonable relation to public safety and welfare, and

do recognize the dangers in the sale and handling of such oils and volatile products.

It is claimed that the provisions of Section 13 of said act of 1908, is of no benefit to the public and entirely unnecessary, but is made the means for collecting revenue for the state.

This is the provision of said act which provides that all gasoline, petroleum or similar or like substances, having a lower flash test than provided therein for illuminating oils, shall be inspected by the state inspector, and shall stamp on the package containing the substance a printed inscription of the name of such substance, the word "dangerous," the date of inspection, and the name of the officer making such inspection.

It is claimed that all the inspectors are required to do under that provision of said act is to brand the same "dangerous."

It is a mandatory provision of said act for an inspection of such products. The fact that the services required under said act were not performed, would not imply that the legislative intent was that they should not be performed, nor imply that the legislative intent was to provide a mere revenue measure.

If the provisions of Section 10 of said act do not provide a method of inspection and standard of test applicable to the products named in Section 13 of the act, then it is a matter for the Legislature to provide for any such requirements. The absence of such, or failure to make the inspection, or the want of necessity for such inspection, is properly a matter for the Legislature.

The most serious question presented by the demurrer is whether the amount of surplus revenue derived and paid into the treasury from said inspection is so excessive and disproportionate to the expenses as to indicate the intent to raise revenue for the state, and whether the act is not one for the purpose of inspection under the police power.

The petition shows that the revenue collected under the provisions of said act ranges from about two and one-half times the expenses in 1908, to slightly less than three times in 1912.

In the year 1912, the net revenue paid into the state treasury under said act was $81,116.98.

The petition shows an increase from year to year of the amounts paid into the state treasury. In 1908 the amount paid into the treasury from said collections was $32,109.35; in 1909 was $51,037.34; in 1910 was $59,974.90; in 1911 was $67,137.44; and in 1913, up to date of filing the petition in December, 1913, was $74,996.37.

The fact that the receipts are found to average more than enough to defray the expenses incurred in enforcing a regulation measure does not raise a presumption of the legislative intent to create a revenue or taxing measure.

It could not be reasonably expected that the Legislature, which has the discretion of fixing inspection fees, could fix them to exactly correspond with the actual expenses incurred in administering the law, and for this reason it is not uncommon that the revenue derived is greatly in excess of the expenses incurred.

What is a reasonable fee must depend largely upon the sound discretion of the Legislature, having reference to all the circumstances and necessities of the case.

It will be presumed that the amount of the fee is reasonable unless the contrary appears upon the face of the law itself, or the facts established.

In *New Mexico* v. *Rio Grande R. R.*, 203 U. S., 38, Mr. Justice Day in the opinion says:

"The exercise of the police power may and should have reference to the peculiar situation and needs of the community, and is not necessarily invalid because it may have the effect of laying a tax upon the property affected, if its main purpose is to protect the people against fraud and wrong.

"The law being otherwise valid, the amount of the inspection fee is not a judicial question; it rests with the Legislature to fix the amount, and will only present a valid objection if so unreasonable and disproportionate to the service rendered as to attack the good faith of the law."

The law in question does not specify any purpose for which said money so collected and turned into the state treasury from the fees for said inspection of oils shall be applied.

The court say in *Marmet* v. *State*, 45 O. S., 68, it would not necessarily follow, even if the law required the money to be

placed to the credit of the general fund, that the purpose of the law was exclusively the raising of general revenue, because no impediment exists to placing in one fund moneys intended for different purposes.

Neither does the statute show that the Legislature made a material increase in the collections under the law by an amendment thereof after it was demonstrated that before the amendment the collections paid into the state treasury were already excessive.

In this respect the case at bar differs from *Janes* v. *Graves*, cited in the brief, where it appears from the report of that case in 1912, the surplus from the collections for motor vehicles was $276,155.10. This was the revenue after paying the expenses for administering the law.

The law in question in that case was the act of April 28, 1913, to take effect January 1, 1914. In the light of the great surplus under the former law the Legislature made a material increase in the license fees under the new law, the one there in question. Hence that case differs materially from the facts in this case. In the case at bar there is no increase in the fees for inspecting oils, and such manifestation of the legislative intent to create a revenue measure is not apparent in that respect in the oil inspectors law.

I am of the opinion that at the time of the passage of said oil inspectors act, there did not exist a legislative intent to create a revenue measure. A careful consideration of the act itself, and all the circumstances, indicate that it was intended to be a regulation for the inspection of oils for the public welfare and benefit.

Whether by reason of the gradual increase of the surplus paid into the state treasury since 1908, that said surplus has, under all the circumstances as pleaded, reached such a sum whereby the court would be justified in declaring the law a revenue measure, is the real question here for determination.

It is argued by defendant's counsel that a law, constitutional at the time of its enactment, remains constitutional unless the Constitution is changed.

It is not necessary, and the court does not decide that question here, inasmuch as the conclusions reached are predicated on other grounds.

It may be well, however, in this connection, to call attention to the language of the court in *Red "C" Oil Mfg. Co. v. Board of Agriculture*, 222 U. S., 380, wherein the court say:

"What relief should be awarded in the event the Legislature failed in its positive duty in this particular is not a question open for consideration upon this record."

The Attorney-General has pointed out several sections of the statutes to show that the expenses for salaries for the inspectors and deputies, and the expenses incident to the proper conduct of the office, provided by said law, do not cover all the cost to the state for maintaining said department. The suppying said department with office rooms, printing and stationary, he claims are additional expenses that come out of the general revenue fund of the state. That the state also provides the time and services of the Attorney-General as legal counsel for the oil in-spectors department when necessary; and, provides the services of the several prosecuting attorneys of the state, in enforcement of the penal provisions of the act, and the services of the pro-fessor of chemistry of the Ohio State University as an arbiter in dispute between the inspectors and dealers. How great a burden this devolves upon the state, and the additional cost to the state out of the general fund, does not appear. However that may be, I have reached the conclusion that the surplus fund paid into the state treasury under said act is not at this time so excessive and disproportionate to the expenses involved that it would justify the court in holding said statute unconstitutional. The facts pleaded fail to show a legislative intent to create a revenue law. While the surplus fund in the years specified show an increase from year to year up to the beginning of this action, I am of the opinion that the case falls largely within the reasoning and holding of the court in the Red "C" Oil Manu-facturing case (*supra*), wherein the court say that "if the re-ceipts are found to average largely more than enough to pay

the expenses, the presumption would be that the Legislature could undertake the change.''

In the Red ''C''. Oil case the surplus was more than double the amount necessary for the expenses of the inspection, while in the case at bar the net revenue paid into the treasury is some greater, but is less than three times the expenses.

My convictions are such that raise in my mind a doubt that the surplus is so large as to justify a court holding the law unconstitutional. In *Marmet* v. *State*, 45 O. S., 64, Judge Spear, in the opinion says:

''If the law, as to the provisions involved, is shown to be *clearly* and *palpably* in conflict with the Constitution, so that there is no doubt or hesitancy in the mind of the court, it should be so held. But if there is any doubt upon the subject, that should be solved in favor of the law, and the court should decline to interfere.''

On the conclusions here reached it is not necessary to discuss the question as to this law being an excise tax if the court decides that the law is a tax. The conclusion reached by the court is that the law is not a tax, but it is an inspection regulation within the police power of the state.

One of the demurrers, or grounds of demurrer, is that the court has no jurisdiction on the subject-matter of the action. It is claimed that the action is in effect one against the state. I am of the opinion that the action is not in effect against the state, but is one against the state oil inspector, the officer who administers said department. The court has jurisdiction of the subject of the action. The demurrer raising the question of jurisdiction is overruled.

I am of the opinion that the said legislative act in question is constitutional.

The demurrer to the petition on the ground that the petition does not state facts sufficient, is sustained.