## CLEVELAND REFINING CO., OF CLEVELAND, OHIO, v. PHIPPS.

(District Court, S. D. Ohio, E. D. December 21, 1921.)

No. 186.

1. **Commerce ⬦51—State has power to exact reasonable fees only for inspection of articles entering in interstate commerce.**

 A state has power to enact proper inspection laws and provide for the collection of the necessary expense of inspection, and is not required to fix the fees which with exactness the fees which will cover such expense, but as applied to articles of interstate commerce the fees must reasonably approximate such cost, and not be so excessive as to render the law a revenue measure.

2. **Commerce ⬦51—Ohio oil inspection law held invalid, as imposing an unlawful burden on interstate commerce.**

 Gen. Code Ohio §§ 844–868, as amended by 105 Ohio Laws, p. 309, providing for inspection of petroleum products and fixing fees to be charged therefor, which aggregated in the first year 63 per cent. greater than the inspection costs, and have since constantly increased, until, in each of the two years ending in 1920, they were more than double such cost, no distinction being made between oil produced in the state and that brought from other states, held invalid, as imposing an unlawful burden on interstate commerce, in violation of article 1, §§ 8 and 10, of the Constitution.

3. **Commerce ⬦41(1)—Interstate shipment protected until sale of original packages.**

 Where goods are transported into one state from another in original packages, interstate commerce therein is not completely terminated, and they are protected by the commerce clause of the Constitution against excessive inspection fees, until after their sale at the point of destination.

4. **Commerce ⬦51—Law held not valid as applied to articles of interstate and intrastate commerce.**

 Under the rule that, in the interpreting of statutes levying taxes, their provisions cannot be extended by implication beyond the clear import of the language used, where an inspection law prescribes excessive fees, without discriminating between the interstate and intrastate character of the commodity, the court cannot separate the two classes, and attribute the excess of fees collected to an excise tax on the domestic product.

In Equity. Suit by the Cleveland Refining Company of Cleveland, Ohio, against W. H. Phipps, individually and as Director of the Department of Commerce of the State of Ohio. On motion for preliminary injunction. Granted.

Chamberlin & Fuller, of Cleveland, Ohio, and H. B. Myers, of Columbus, Ohio, for plaintiff.

John G. Price, Atty. Gen., of Ohio, and Ray Martin, Sp. Counsel, of Newark, Ohio, for defendant.

Before DONAHUE, Circuit Judge, and SATER and PECK, District Judges.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

PER CURIAM. The plaintiff, an Ohio corporation, assails on various grounds the constitutionality of the act passed by the General Assembly of Ohio May 19, 1915, entitled:

"An act to provide for the inspection of petroleum, illuminating oils, gasoline and naphtha and to repeal sections 844 to 868, inclusive of the General Code," Ohio Laws, vol. 105, p. 309.

The sections of the act are now known as sections 844–868, both inclusive, of such Code. Invoking proceedings under section 266 of the Judicial Code (Comp. St. § 1243), the plaintiff seeks a temporary injunction against the defendant, as an individual and as director of the state department of commerce, to prevent him from enforcing such act; the defendant, as such director, having been vested by the act of April 26, 1921 (109 Ohio Laws, p. 105), with all the powers and duties conferred on the state inspector of oils by the act of 1915, and intending to enforce its provisions. For a considerable time past the plaintiff has been and is still engaged at East Cleveland, Ohio, in the sale and distribution of kerosene, petroleum, and petroleum products, and has invested its capital in storage tanks, buildings, side tracks, machinery, and other equipment necessary for and used in receiving, handling, and delivering such kerosene, oil, and petroleum products, of all which kinds of goods it has in storage large quantities. It buys in other states, ships into Ohio, and receives at its place of business, large quantities of such articles in storage tanks, barrels, cans, and packages, and has contracts for such articles which it is bound to consummate, and which it cannot perform without great loss, except through its established business. It also employs a large number of persons to sell and deliver its goods to the public.

By the terms of the statute, oil intended for sale for illuminating purposes within the state must be inspected in Ohio. When consigned to a distributing station in tank cars, it must be inspected at the refinery where manufactured, if located in the state, or at the distributing station to which it is consigned, at the discretion and direction of the state inspector. Section 860. All mineral or petroleum oil, and any fluid or substance, the product of petroleum, or into which petroleum or a product of petroleum enters or is a constituent element, whether manufactured within the state or not, and all gasoline, petroleum ether, or similar or like substances, under whatever name held, whether manufactured within the state or not, having a lower flash test than provided by the act for illuminating oils, shall be inspected before being offered for sale to a consumer for use in the state. Sections 854, 865. Provision is made for a state oil inspector and deputy inspectors (a number of whom are required), and for payment of their prescribed salaries and their necessary traveling and other expenses, and also for the payment of the salaries of stenographers and clerks, from the state treasury. Sections 848, 849.

The statute requires that each owner of the several kinds of goods required to be inspected shall pay to the state inspector or his deputy for such inspection, for a single barrel, package, or cask, 25 cents; when the quantity inspected does not exceed 10 barrels, of 50 gallons each, in the aggregate, for each barrel, 15 cents; when the quantity in-

spected does not exceed 50 barrels, of 50 gallons each, in the aggregate, for each barrel, 10 cents; when the quantity inspected exceeds 50 barrels, of 50 gallons each, in the aggregate, for each barrel, 3 cents. All fees are payable on demand of the state inspector and in case of default beyond the tenth day of the end of the month in which such inspection is made, the fees are made a lien on the article inspected. Section 850. The state inspector is required to keep a record of inspections, showing the date of inspection, number of barrels inspected, and the name of the person for whom inspection is made. A like record must also be made by each deputy inspector regarding his activities. All fees received are paid into the state treasury, to the credit of the oil inspection fund. Sections 851, 852, 853.

If any manufacturer, vendor, or dealer shall sell or offer for sale any oil, fluid, or substance marked "Rejected for illuminating purposes," or any gasoline, petroleum ether, or similar or like substance, which, after inspection, has been marked "Dangerous," he shall be fined not to exceed $1,000, or be imprisoned in the county jail not to exceed 20 days, or both. Sections 859, 865. Any person who transfers the contents of a tank car, which have been rejected as the result of an examination, to a storage or receiving tank from which illuminating oil is distributed to consumers or dealers within the state, shall be subject to the penalty above stated (section 861); and any driver of a wagon from which oil intended for consumption for illuminating purposes within the state is delivered to consumers or dealers, and which does not bear a certificate such as covers the contents of the last tank car emptied into the storage or receiving tank from which the wagon was filled, shall be fined $10 for each day of his violation of the law.

The inspection fees collected, beginning with July 1, 1915, and ending on June 30, 1920, were $639,057.47. The disbursements were $321,188.68. In addition to the fees thus actually received, there was a considerable sum of outstanding uncollected accounts at the close of the period named. Exclusive of such accounts, the fees collected in such five years exceeded the cost of inspection by $317,868.79. On account of the increased consumption of the articles inspected, the excess of receipts over the cost of inspection in each of the years within the above-named period exceeded that of the preceding year, the excess for the year ending June 30, 1916, being $34,219.23, and thereafter the excess annually increased, until for the year ending June 30, 1920, it was $104,690.23. On account of a reduction in the number of deputy oil inspectors and change in the mode of inspection, the inspection fees and the cost of inspection for the year ending June 30, 1921, cannot be stated: but, in view of the increased use of the articles subject to inspection, it is thought the inspection fees for the year then ending will not be less than those of the preceding year, while the cost of inspection will be less, on account of the reduction in the number of inspectors.

The plaintiff contends that the inspection fees charged are excessive. that they interfere with interstate commerce, and are an unlawful impost duty upon goods shipped into Ohio from other states, and that

the statute is therefore violative of article 1, sections 8 and 10, of the federal Constitution.

[1, 2] The enactment of proper oil inspection laws is a valid exercise of the police power. Castle v. Mason, 91 Ohio St. 296, 110 N. E. 463, Ann. Cas. 1917A, 164; Red C Oil Mfg. Co. v. Board of Agriculture, 222 U. S. 380, 392, 32 Sup. Ct. 152, 56 L. Ed. 240. The state was without power to regulate interstate commerce, but under the federal Constitution it could collect the necessary expense of its inspection laws, with the result that interstate commerce to that extent would be lawfully burdened. The power to fix fees to cover such expenses rested primarily with the General Assembly, which in its discretion was required to determine the amount to be charged, and, on account of the fluctuation in trade and the inability to determine the sum that would be realized in the way of fees under a given law, it was not required to determine with exact nicety the difference between cost and collection. A surplus collected in any given year above inspection expenses would not necessarily indicate an invalid law, for the reason that such excess might be required to balance the deficit of some other year. In the instant case, however, leaving out of consideration the outstanding unpaid fees, the collections, when least, were 63 per cent. greater than the inspection costs. This percentage uniformly increased, and for the years ending June 30, 1919, and June 30, 1920, respectively, the collections were more than twice the cost of inspection. The excess over inspections has been uniformly great, and has so advanced from year to year that the fees provided by the statute must be held to be unreasonable and disproportionate to the service rendered, and the act must be declared unconstitutional, as imposing a direct and unlawful burden on interstate commerce, unless interstate shipments under the provisions of the act are separable from intrastate shipments, and the fees collected for the inspection of the former are equal or substantially equal to the cost of inspecting shipments of that character. The defendant's position is that the two classes of shipments are thus separable, and that interstate shipments have in fact been inspected at a loss to the state.

It is significant that the state has not, at any time, in the enforcement of the law, kept or endeavored to keep a separate record of interstate and intrastate shipments, or of the sums realized from their inspection, although a belated and imperfect effort was made at the hearing to show that such shipments and sums are separable. The construction thus placed upon the law by the state's executive officers is entitled to great respect. Hahn v. United States, 107 U. S. 402, 406, 2 Sup. Ct. 494, 27 L. Ed. 527; Smythe v. Fiske, 90 U. S. (23 Wall.) 374, 404, 23 L. Ed. 47. In the light of Castle v. Mason, supra, and Foote v. Maryland, 232 U. S. 494, 34 Sup. Ct. 377, 58 L. Ed. 698, as well as of the express provisions of the act, such construction is correct, for the reason the statute does not contemplate a separation of interstate and intrastate shipments and contains no provision for a separate record or accounting for the same, or from whom and where purchased, or from whence shipped, or any suggestion of a classification with reference to the character of the shipments. It applies generally to any and

all kerosene, petroleum, and petroleum products, whether manufactured in this state or not, and whether shipped wholly within the state or from other states into this. Shipments of both classes, without discrimination or intent of separation, are subjected to the provisions of the act, are classified collectively with reference to the quantity only of fluids inspected, are charged with the same fees, and the commingled receipts arising from their inspection are required to be paid into the state treasury. The act, except as to the amount of fees charged for inspection, is in its essential details, and even in nearly all of the language employed, a re-enactment of the law declared unconstitutional in Castle v. Mason, supra, in which case it was found that such earlier act does not materially differ from the law declared void in Foote v. Maryland, and that considered in Red C Oil Mfg. Co. v. Board of Agriculture, supra.

[3] The General Assembly, with at least constructive knowledge that, under the operations of the law, the excess of receipts over expenses was large and annually mounting, permitted the inspection charges to remain undisturbed, and in this respect its conduct has differed from that of the Minnesota Legislature with reference to the act considered in Pure Oil Co. v. Minnesota, 248 U. S. 158, 39 Sup. Ct. 35, 63 L. Ed. 180. Where goods, such as the plaintiff deals in, are transported in original packages from other states into this, interstate commerce in such goods is not completely terminated, and they are protected by the commerce clause of the Constitution against excessive inspection fees, until after their sale at the point of destination within this state. Standard Oil Co. v. Graves, 249 U. S. 389, 39 Sup. Ct. 320, 63 L. Ed. 662, approving the conclusions reached in Castle v. Morgan; Askren v. Continental Oil Co., 252 U. S. 444, 449, 40 Sup. Ct. 355, 64 L. Ed. 654. The fees prescribed by the statute are beyond the cost of legitimate inspection to determine the quality of the articles inspected, and the act is therefore, not only a police measure, but a revenue measure also. Such cost by necessary operation unduly burdens and obstructs the freedom of interstate commerce, and, as such commerce cannot be separated from the intrastate shipments, the whole tax is void.

Bowman v. Continental Oil Co., 256 U. S. ---, 41 Sup. Ct. 606, 65 L. Ed. ---, decided by the Supreme Court of the United States June 6, 1921, on which the defense places reliance, is distinguishable from the case at bar. The New Mexico law there under consideration imposed a tax of 2 cents per gallon upon all gasoline sold or used in that state. By the terms of the statute, every distributor was required to render to the auditor of state, on a form prescribed by such officer, a monthly statement of all gasoline received, sold, distributed or used by such distributor during the preceding month, and to transmit therewith a sum equal to 2 cents per gallon for all gasoline so sold, distributed, or used during such month. The statement so rendered was further required to show from whom the gasoline so received was purchased and by whom it was shipped. Every retail dealer was also compelled to file with such officer a monthly statement showing the gasoline received, sold, and used by him, and from whom the same was

purchased. The statements so submitted would show, or in any event could be made to show, at the election of the state auditor, who prescribed the forms of returns, precisely what shipments were interstate and what were intrastate. The only duty assigned to inspectors was the examination of the books and accounts of distributors, retail dealers, warehousemen, and others receiving and storing gasoline, and of railroad and transportation companies, relating to purchases, receipts, shipments, and sales of gasoline. The reports submitted to the state auditor would necessarily show upon their face what shipments were interstate and what were intrastate, and the ease with which the separation of the kinds of shipments could be made is apparent from the facts recited in the court's opinion. The situation presented to the court closely resembled that considered in Ratterman v. Western Union Telegraph Co., 127 U. S. 411, 8 Sup. Ct. 1127, 32 L. Ed. 229.

The Ohio act under consideration contains no provisions akin to those above mentioned found in the New Mexico statute. Under the Ohio law inspectors may enter upon the premises of any manufacturer, vendor, or dealer in any fluid mentioned in the act and ascertain, and may require a statement showing, the quantity sold within any named period (section 868), but their duty ends with their determination of the quantity of the specified fluids and the testing of the same in the statutory method. The statute does not contemplate that the oil inspector or his deputies shall concern themselves with where purchases were made, or whence shipped, or that they shall make any report touching the same. In the Bowman Case, the Supreme Court regarded the application of the tax to interstate commerce as separate from its application to intrastate commerce, condemning the impost on the former, but sustaining it on the latter.

[4] We are asked, in construing the Ohio law, not only to view the impost with respect to the two classes separately, but also to separate and apportion between them the expense of inspection, collection, and administration, and, having done so, to test the constitutionality of each by the result thus obtained, and to uphold the charge on interstate commerce as reasonable and that upon intrastate commerce as a combined inspection fee and excise tax. The act makes no such separation of cost, nor does it afford any means for so doing. Were we to adopt the defendant's contention, we would be compelled to prescribe rules for the division of costs, and to assume that the General Assembly intended to levy on intrastate commerce a tax as well as an inspection fee; but this is not permissible, for the reason that in the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used. Gould v. Gould, 245 U. S. 151, 153, 38 Sup. Ct. 53, 62 L. Ed. 211.

Nor is Saviers v. Smith, 101 Ohio St. 132, 128 N. E. 269, involving the Ohio Motor Vehicle Act, helpful to the defense upon the point upon which this opinion is thus far made to rest. That act provides for an annual license tax on the operation of motor vehicles on public highways of the state for the purpose of enforcing and paying the expense of administering the law and of maintaining and repairing such highways and streets. It is in no sense an inspection law, and is not

therefore subject to the limitation imposed by the federal Constitution on laws of that character, but rests upon the provisions of the state Constitution relating to the power of taxation. The police regulations contained in it are merely incidental, relate to its administration and the regulation and registration of motor vehicles, and do not affect its main intended object. On its face it purports to be, and was by the court held to be, a tax law laid on a privilege for a manifest specific purpose; i. e., the production of revenue to be used as above stated. It was said by the court that, if the law raised sufficient to pay only the expense of administering it, it would not be a tax at all, but in the nature of a license. Its enactment was but an application of one of the state's constitutional methods of producing revenue for the maintenance and repair of state and county roads and the construction and maintenance of streets in municipalities.

Other questions discussed by counsel need not be decided. Phipps, as an individual, is dismissed from the case. As such he is not charged with the enforcement of the law. As against him, as director of the department of commerce, a temporary injunction may go.