## GREAT NORTHERN RAILWAY CO. *v.* WASHINGTON.

No. 20. Submitted October 14, 1936. Restored to the Docket October 26, 1936. Argued December 7, 8, 1936.—Decided February 1, 1937.

*Messrs. Thomas Balmer* and *L. B. daPonte,* with whom *Messrs. F. G. Dorety* and *Edwin C. Matthias* were on the brief, for appellant.

*Mr. George G. Hannan,* Assistant Attorney General of Washington, with whom *Mr. G. W. Hamilton,* Attorney General, was on the brief, for appellee.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This is an appeal from a judgment of the Supreme Court of Washington [1] in an action brought by the ap-

---

[1] 184 Wash. 648; 52 P. (2d) 1274.

pellant to recover fees for the years 1929–1933 paid under protest to the State Department of Public Works. The relevant statutory provisions are: [2]

"Section 1. That hereafter every person, firm or corporation engaged in business as a public utility and subject to regulation as to rates and charges by the department of public works, except auto transportation companies and steamboat companies holding certificates under chapter 248 of the Laws of 1927, shall, on or before the first day of April of each year, file with the department of public works a statement on oath showing its gross operating revenue for the preceding calendar year or portion thereof and pay to the department of public works a fee of 1/10 of one per cent of such gross operating revenue: *Provided,* That the fee so paid shall in no case be less than ten dollars."

"Sec. 2. All sums collected by the director of public works under the provisions of this act shall within thirty days after their receipt be paid to the state treasurer, and by him deposited in a fund to be known as the public service revolving fund."

The Supreme Court of the State has defined the exaction as a regulatory or inspection fee, and has declared that the fund created by the sums collected must be used solely for administering the state public service commission law.[3]

The complaint [4] alleges that the Department of Public Works exercises jurisdiction and supervision over sundry

---

[2] C. 107 Washington Session Laws of 1929. (Remington's Revised Statutes §§ 10417, 10418.) This act amended § 1 of c. 113 of the Laws of 1921, as amended by § 1, c. 107 of the Laws of 1923. It left § 2 of c. 113, Laws of 1921, in effect.

[3] *Pacific T. & T. Co.* v. *Seattle,* 172 Wash. 649; 21 P. (2d) 721; affirmed on other questions, 291 U. S. 300. See also the opinion below, 184 Wash., pp. 650, 651; 52 P. (2d) p. 1275.

[4] The complaint as filed sought recovery also of sums paid pursuant to other statutory provisions. The appellant, however, abandoned these items of claim.

public utilities, including common carriers by rail, electric and street railways, gas, electrical and water companies, telegraph and telephone companies, wharfingers, warehousemen, and carriers by water, engages in many activities disconnected from, and unrelated to, the inspection and supervision of rail carriers, and has a variety of duties in the enforcement of the State's police power. The complaint affirms that the fee is not based upon or restricted to the cost of legitimate regulation or supervision but is used to defray the costs of other activities in connection with railroads and also of supervising and inspecting unrelated public utilities and of performing other duties the expense of which cannot legitimately be imposed upon carriers by rail; that the fee is grossly in excess of the reasonable cost of inspection and regulation of railroads; that, to January 1, 1933, there had accumulated from the fees collected more than $250,000 in excess of the amount expended by the department in the discharge of all its duties; that the statute is in truth a revenue measure; that the State taxes plaintiff's property and other like property on an *ad valorem* basis. The complaint charges that the fee is a burden on, and a regulation of, interstate commerce in violation of Article I, § 8 of the Constitution; is so arbitrary, excessive, discriminatory and unequal as to deny the plaintiff equal protection of the laws and to deprive it of property without due process of law, in violation of the Fourteenth Amendment.

The answer admits plaintiff's payment under protest; admits that the Department of Public Works exercises jurisdiction and supervision over many classes of public utilities, including common carriers, and that the plaintiff's property within the State is assessed on an *ad valorem* basis for taxes like other property; admits plaintiff's capacity to sue, but denies substantially all other allegations of the complaint.

The case was tried without a jury. The evidence largely consisted of the annual reports of the department. By the uncontradicted evidence and by the relevant statutes the following facts were established. The department has jurisdiction of various classes of public utilities, including railroads, electric and street railways, gas, electric and water companies, telegraph and telephone companies, wharfingers, warehousemen, and carriers by water, in respect of which it exercises many regulatory and supervisory duties. As respects railroads, the department constantly exercises functions unrelated to inspection and supervision, including the statutory duties of taking part in litigation before the Interstate Commerce Commission affecting the citizens of the State, and of acting judicially in decreeing refunds of overcharges. These functions, unrelated to the inspection and regulation of railroads, entail large expense. Between 1929 and 1933 the legislature made no appropriation from the State's general fund for the expenses of the department's activities, all being paid indiscriminately out of the department's fund derived from the fees collected from businesses subject to its jurisdiction. During this period the surplus accumulated from such receipts was $224,193.95, which was expended in 1934 in carrying on investigations of, and litigation with, public utility corporations other than railroads. No separate accounts are kept, or required by law to be kept, with respect to the expense of these various activities, and it is impossible to determine from the records and accounts of the department the expense of inspecting and regulating railroads separate and apart from the expense of regulating other utilities or other functions of the department.

The plaintiff called the department's auditor who testified that the charge of one-tenth of one per cent of gross income collected from utilities goes to build up a fund

from which all the department's expenses are paid; that he had figures classifying the expenditures according to the various kinds of utilities with which the department is concerned. These calculations he had made for himself, there being no duty under the law to keep accounts on this basis. He testified that, in computing the expenditures in connection with railroads, he lumped them as railroad charges and made no separation of the costs of inspection and regulation, the costs of rate hearings, and the costs of reparation proceedings, although the evidence establishes that many of the railroad charges had to do with reparation cases and litigation before the Interstate Commerce Commission. At the close of plaintiff's case, the defendant recalled the auditor as its own witness. He testified that the disbursements chargeable to the railroads for the period 1929 to 1933, inclusive, exceeded the receipts from railroads in the same period by $37,833. He did not, however, qualify what he had previously stated, that, in making up these figures, he had lumped all railroad charges, whether for inspection and regulation or interstate commerce cases or reparation cases. Upon cross-examination it developed that the figures he submitted were not official, and, so far as they covered salary items, had been made up from slips which the various employes, at his request, had turned in monthly allocating the time each employe spent in the various branches of the work, and the witness had no personal knowledge of the accuracy of these slips. Plaintiff objected to the testimony and moved to strike it on the ground that it was hearsay but the court let it stand, subject to the objection. A judgment awarded the plaintiff by the trial court was reversed by the Supreme Court.

The principles governing decision have repeatedly been announced and were not questioned below. In the exercise of its police power the state may provide for the supervision and regulation of public utilities, such as rail-

160

roads; may delegate the duty to an officer or commission; and may exact the reasonable cost of such supervision and regulation from the utilities concerned and allocate the exaction amongst the members of the affected class without violating the rule of equality imposed by the Fourteenth Amendment.[5] The supervision and regulation of the local structures and activities of a corporation engaged in interstate commerce, and the imposition of the reasonable expense thereof upon such corporation, is not a burden upon, or regulation of, interstate commerce in violation of the commerce clause of the Constitution.[6] A law exhibiting the intent to impose a compensatory fee for such a legitimate purpose is *prima facie* reasonable.[7] If the exaction be so unreasonable and disproportionate to the service as to impugn the good faith of the law [8] it cannot stand either under the commerce clause or the Fourteenth Amendment.[9] The state is not bound to adjust the charge after the fact, but may, in anticipation, fix what the legislature deems to be a fair fee for the expected service, the presumption being that if, in practice, the sum charged appears inordinate the legislative body will reduce it in the light of experience.[10] Such a statute may, in spite of the presumption of validity, show on its

[5] *Charlotte, C. & A. R. Co.* v. *Gibbes,* 142 U. S. 386; *New York* v. *Squire,* 145 U. S. 175, 191.

[6] *Atlantic & Pacific Tel. Co.* v. *Philadelphia,* 190 U. S. 160; *Mackay Telegraph Co.* v. *Little Rock,* 250 U. S. 94, 99.

[7] *Western Union* v. *New Hope,* 187 U. S. 419, 425; *Pure Oil Co.* v. *Minnesota,* 248 U. S. 158, 162.

[8] *McLean* v. *Denver & R. G. R. Co.,* 203 U. S. 38, 55. Compare *Red "C" Oil Co.* v. *North Carolina,* 222 U. S. 380, 393. *Western Union* v. *New Hope, supra.*

[9] *Brimmer* v. *Rebman,* 138 U. S. 78, 83; *Postal Telegraph-Cable Co.* v. *Taylor,* 192 U. S. 64; *Pure Oil Co.* v. *Minnesota, supra,* p. 162.

[10] *Atlantic & Pacific Tel. Co.* v. *Philadelphia, supra,* p. 164; *Postal Telegraph-Cable Co.* v. *Taylor, supra,* p. 69. *Foote & Co.* v. *Stanley,* 232 U. S. 494, 503, 504.

face that some part of the exaction is to be used for a purpose other than the legitimate one of supervision and regulation and may, for that reason, be void.[11] And a statute fair upon its face may be shown to be void and unenforceable on account of its actual operation.[12] If the exaction be clearly excessive it is bad *in toto* and the state cannot collect any part of it.[13]

The contention is that the challenged statute is void on its face since it discloses that the fee charged the appellant is not imposed for, or limited by, the reasonable cost of supervision or regulation of its business; and, if this is not so, the case made in respect of the act's operation cast on the appellee the burden of proof, which it failed to carry.

The Supreme Court of the state based its decision in favor of the validity of the statute on two grounds: First, that the act is not unconstitutional on its face; secondly, that, as the answer denied the material allegations of the complaint concerning the operative effect of the act, the plaintiff had the burden of proof, which it failed to sustain; and, if the burden was shifted by the case made by the plaintiff, the evidence preponderated in favor of the defendant.

*First.* The statute does not exhibit a failure reasonably to adjust the fee to the expense of the supervision and regulation of railroads. The legislation is to be accorded the presumption of fairness and regularity. It cannot be deduced from the provisions of the act that the amounts collected from the railroads grossly exceed those legitimately expended for inspection and regulation. The ap-

---

[11] *Foote & Co.* v. *Stanley, supra,* p. 505; *Lugo* v. *Suazo,* 59 F. (2d) 386.

[12] *Western Union* v. *New Hope, supra,* p. 425; *Foote & Co.* v. *Stanley, supra,* p. 507.

[13] *Postal Telegraph-Cable Co.* v. *New Hope,* 192 U. S. 55; *Foote & Co.* v. *Stanley, supra,* p. 508.

162

pellant insists that such is the necessary inference from the circumstance that the same fee is exacted from public utilities generally, and the collections go into a single fund and are indiscriminately disbursed for the many branches of the department's work. But these facts, without more, do not prove that the amounts derived from the railroads are in excess of the legitimate expenses of inspection and regulation. It may be that, in spite of this lumping of receipts and expenditures, the fees paid by the railroads are no more than enough to defray such expenses. The court below was, therefore, justified in refusing to hold the statute void on its face.

*Second.* The court thought the plaintiff had the burden of showing that the sums exacted from rail carriers substantially exceeded the amounts expended for regulation and supervision, and the proofs offered were insufficient to shift the burden to the defendant. This view was erroneous. *Foote & Co.* v. *Stanley,* 232 U. S. 494.

In that case it appeared that the plaintiffs were packers of oysters taken from the waters of Maryland, Virginia, and New Jersey, and shipped to Baltimore. A statute of Maryland required that the oysters be inspected at Baltimore. It imposed a charge of one cent a bushel "to help defray the expenses of such inspection and the other expenses of the State Fishery Force, upon all oysters unloaded from vessels at the place where said oysters are to be no further shipped in bulk in vessels." The plaintiffs refused to pay the exaction and, upon threat of enforcement, filed a bill in a state court for injunction alleging the fee was excessive, a burden on interstate commerce, and a violation of the constitutional provision that "No state shall, without the consent of the Congress, lay any imposts or duties on imports or exports except what may be absolutely necessary for executing its inspection laws." The Maryland Court of Appeals [117 Md. 335; 82 Atl. 380] affirmed a decree dismissing the bill and this

court reversed its decision. The plaintiff asserted that as the act laid the fee for the expense of inspection, "and other expenses," it was obvious that the state had provided for the collection of more than was necessary for inspection. To this the state answered that the section levying the fee was but a part of an elaborate system of inspection imposed upon the state fishery force. It appeared from the evidence, as it does here, that the fishery force had duties other than those of inspection which were to be paid for out of the fund produced by the fees. This court said (p. 503):

"But while the two duties may sometimes overlap, there is a difference between policing and inspection, and if the State imposes upon one set of officers the performance of the two duties and pays the whole or a part of the joint expenses out of inspection fees, *it must be made to appear that such tax does not materially exceed the cost of inspection—the burden in such cases being on those seeking to collect the combined charge.*"
And said further (p. 506):

"But the commingling of these various duties, paid for out of a fund raised for inspection, does not necessarily show that the fee is excessive. For the presumption of invalidity arising from such intermingling might be met by carrying the burden of showing that, while the statute required payment out of such joint fund, the collections were not sufficient, but only helped, to pay the definitely ascertained expenses of inspection. The question of reasonableness, therefore, may be considered in the light of the practical operation of the law with a view of determining, with reasonable certainty, the permanent relation between the amount collected and the cost of inspecting."

The court examined the evidence as to the operation of a prior law which levied the same charge per bushel and which the challenged act superseded, consisting of the

annual reports of the comptroller, and found therefrom that one-third of the amount collected was sufficient to pay the cost of inspection and the other two-thirds had been appropriated to "other expenses of the Fishery Force." In the light of the operation of the previous act, and the failure of the state to show that the amount collected under the new law would not be more than was necessary for the expenses of inspection proper, the challenged statute was held void.

There are factual distinctions between the cited case and the instant one, but they do not affect the binding authority of the former. The law under consideration in the *Foote* case was purely an inspection measure. That here under review is characterized by the state court as one for regulation and inspection. The specific mandate of the Federal Constitution limiting state inspection fees to an amount absolutely necessary for executing a state's inspection laws was treated in the *Foote* case as raising the same issue as was presented in earlier decisions with respect to the bearing of the commerce clause upon the imposition of regulatory and inspection fees imposed upon local property of interstate enterprises. And the cases decided under the commerce clause dealing with the reasonableness of regulation and inspection fees have been treated by this court as apposite to the guarantees of the Fourteenth Amendment. In the *Foote* case reference to the accounts and records kept by state authority disclosed the extent of the excess of receipts over expenditures, whereas here it is demonstrated that while expenses other than those of inspection and regulation of railroads are paid out of the fees, the amount of the excess over what is necessary for regulation and inspection cannot be ascertained from the department's accounts. The *Foote* case is authority that in such circumstances the burden is on those seeking to collect the charge.

The State Supreme Court, after holding that the plaintiff failed to carry its burden, and that no duty of showing the amount necessary for inspection and regulation of railroads lay upon the defendant, proceeded to discuss the evidence and reached the conclusion that the proof preponderated in favor of the defendant. This conclusion was based upon the testimony of the department auditor that he had found from memoranda furnished him, and data collected by him, what had been expended in connection with railroads exceeded what they had paid. As already noted the appellant insists that this evidence was inadmissible and lacked value because hearsay.

The state court said:

"While the account kept by the auditor was not official, in the sense that of itself it was admissible in evidence, yet what the auditor did in that respect qualified him to testify as to the ultimate fact. Without further detailing the evidence, we will say that in our opinion, and in so far as there was any evidence on the subject, it preponderated against the findings made by the court as to the cost of supervising and regulating railroads."

Passing the appellant's contention that a federal right may not be denied under the guise of the application of a state rule of evidence,[14] we come to the question whether, when the asserted right has been denied, this court is concluded by a finding of fact or a mixed finding of law and fact made by the state court. We have repeatedly held that in such case we must examine the evidence to ascertain whether it supports the decision against the claim of federal right. A recent exposition

---

[14] Compare *Mackay* v. *Dillon*, 4 How. 421, 447; *Dower* v. *Richards*, 151 U. S. 658, 667; *Cleveland, C., C. & St. L. Ry.* v. *Backus*, 154 U. S. 439, 443; *Cedar Rapids Gas Co.* v. *Cedar Rapids*, 223 U. S. 655, 668; *Bailey* v. *Alabama*, 219 U. S. 219, 239; *Central Vermont Ry.* v. *White*, 238 U. S. 507, 512; *Hill* v. *Smith*, 260 U. S. 592, 594.

of the doctrine is found in *Norris* v. *Alabama,* 294 U. S. 587, a case coming here from a state court, in which the appellant claimed that he had been denied due process by the systematic and intentional exclusion of negroes from the jury lists. The state court held that the evidence did not establish such exclusion. This court reviewed the evidence, reached a conclusion contrary to that of the state court, and reversed the judgment. At pp. 589–590 it was said:

"The question is of the application of this established principle to the facts disclosed by the record. That the question is one of fact does not relieve us of the duty to determine whether in truth a federal right has been denied. When a federal right has been specially set up and claimed in a state court, it is our province to inquire not merely whether it was denied in express terms but also whether it was denied in substance and effect. If this requires an examination of evidence, that examination must be made. Otherwise, review by this Court would fail of its purpose in safeguarding constitutional rights. Thus, whenever a conclusion of law of a state court as to a federal right and findings of fact are so intermingled that the latter control the former, it is encumbent upon us to analyze the facts in order that the appropriate enforcement of the federal right may be assured."

In *Beidler* v. *South Carolina Tax Comm'n,* 282 U. S. 1, the validity of a state inheritance tax act was challenged in a state court, the claim being that the act operated to take property without due process if held to apply to property having no situs in the state. The state court held that intangible property, the transfer of which was sought to be taxed, had acquired a business situs in South Carolina. This court reëxamined the question, in the light of the evidence, and overruled the state court's decision, saying (p. 8):

"But a conclusion that debts have thus acquired a business situs must have evidence to support it, and it is our province to inquire whether there is such evidence when the inquiry is essential to the enforcement of a right suitably asserted under the Federal Constitution."

In *Johnson Oil Co.* v. *Oklahoma,* 290 U. S. 158, there was drawn in question the validity of *ad valorem* taxes laid under a state statute upon the entire fleet of the appellant's tank cars. It was charged that the cars did not have a situs within the state and there was, therefore, no jurisdiction to tax them. The Supreme Court of the state held that all the cars had their taxable situs within the state. This court examined the evidence, reached a contrary conclusion, and reversed the judgment, saying (pp. 159–160):

"As the asserted federal right turns upon the determination of the question of situs, it is our province to analyze the facts in order to apply the law, and thus to ascertain whether the conclusion of the state court has adequate support in the evidence."

Citation of authority for the same principle might be multiplied indefinitely.[15]

While holding the testimony of the department auditor competent, the state court omits to refer to the fact that the figures he presented were not allocated so as to show the amounts spent for inspection and regulation and those expended for other so-called railroad charges which could not be imposed upon the railroads.

---

[15] *Kansas City Southern Ry.* v. *Albers Commission Co.,* 223 U. S. 573, 591; *Creswill* v. *Knights of Pythias,* 225 U. S. 246, 261; *Northern Pacific Ry.* v. *North Dakota,* 236 U. S. 585, 593; *Interstate Amusement Co.* v. *Albert,* 239 U. S. 560, 566; *Truax* v. *Corrigan,* 257 U. S. 312, 324; *Ward & Gow* v. *Krinsky,* 259 U. S. 503, 511; *Aetna Life Insurance Co.* v. *Dunken,* 266 U. S. 389, 394; *Fiske* v. *Kansas,* 274 U. S. 380, 385; *Ancient Order* v. *Michaux,* 279 U. S. 737, 745; *Consolidated Textile Corp.* v. *Gregory,* 289 U. S. 85, 86.

As has been pointed out, the evidence is uncontradicted and conclusive that the sums he mentioned as having been expended for railroad account did include substantial, and apparently large, amounts for activities in the interest of interstate shippers and for the trial of reparation cases. It is impossible to sustain the state court's conclusion that such testimony had any probative value upon the sole issue in the cause, which was whether the statute subjects the railroads to an unreasonably excessive charge for inspection and regulation. As was said in the *Foote* case, the state is at liberty to intermingle duties involving costs properly chargeable to the railroads, with others involving costs not so chargeable, but if it does so, and the exaction is challenged, it must assume the burden of showing that the sums exacted from the appellant do not exceed what is reasonably needed for the service rendered. The State failed to carry this burden.

It results that the judgment must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE CARDOZO, dissenting.

To show that the revolving fund was used as a common pot for the regulation of public utilities generally, irrespective of their special function, does not make out a case of wrong to railroads considered as a separate class or to appellant in particular. For the purposes of this case there is no need to inquire whether anything in the Fourteenth Amendment forbids the recognition of a single and all-inclusive class of public service corporations without further subdivision. If the prohibition be assumed, still the burden is on the railroads to satisfy the court that what was contributed by them was more than what was expended for their account, since otherwise the common pot may have been a help and not a hurt.

That burden was not discharged. Far from being discharged, there was a disclaimer of any attempt or purpose to discharge it. And so the case must fail. *Norfolk & Western Ry. Co.* v. *North Carolina,* 297 U. S. 682, 688, 689, 690.

The decision in *Foote* v. *Stanley,* 232 U. S. 494, much relied on by appellant, is inapplicable here. That was a case under Article I, § 10, of the Constitution, which provides that "no State shall, without the consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws." Maryland passed an act for the payment of charges, characterized as inspection fees, upon imports of oysters from neighboring states. The "inspectors" did more than inspect the oysters; they policed the waters of Chesapeake Bay, being thus policemen as well as inspectors. On its face the act provided that a fee of one cent per bushel should be "levied to help pay the salary of the inspectors and the other expenses of the State Fishery Force." 232 U. S. at 505. In these circumstances the ruling was that in a suit for an injunction brought by the importers the state had the burden of showing that the fee was not an unreasonable one for the service of inspection as distinguished from the other services covered thereby. Imposts upon interstate commerce being generally prohibited, and being lawful only when "absolutely necessary" for the purpose of inspection, a charge covering the service of inspection and also something else must collapse in its entirety unless the state is in a position to break it up into its elements. A power has been granted to be used in exceptional conditions. The state must bring itself within the exception if it seeks to act within the grant.

A very different situation confronts us in the case at hand. Here the statute of the state does not trespass upon a field of legislation where entry is forbidden with-

out the license of the nation. What has been done is well within the field of general legislative power, with every presumption of validity back of it. In such circumstances the burden of making good a claim of invalidity and thus establishing an exception is on the assailants of the rule, and not on its proponents. The conclusion becomes clearer when the statute is analyzed more closely. All that it does is to exact of public utilities generally (with particular exceptions) a fee of 1/10th of one per cent of their gross revenues, confined, however, to operations in intrastate commerce, the fee when collected to be paid into a revolving fund. Laws of Washington, 1929, c. 107; Laws of 1923, c. 107; Laws of 1921, c. 113. Another statute (Laws of Washington, 1929, c. 108) lays a heavier tax (1%), to be paid into the same fund, upon the receipts of auto-transportation companies. Steamship companies of a stated class are subject to a special rule, the fee in their case being 1/5th of one per cent. Laws of Washington, 1927, c. 248. Plainly there is no presumption that these varying contributions are out of proportion to the expenses incurred in supervising and regulating the several classes of contributors. Illegality, if there is any, is to be found in the administration of the statute, and not in anything inherent in its essential scheme and framework. That being so, the taxpayer may not rest upon a showing of possible overpayment. There must be a showing of an overpayment not merely possible but actual, and one substantial in amount. *Norfolk & Western Ry. Co.* v. *North Carolina, supra; Foote* v. *Stanley, supra.* To hold otherwise would be to go counter to the settled rule that "one who would strike down a state statute as obnoxious to the Federal Constitution must show that the alleged unconstitutional feature injures him." *Premier-Pabst Sales Co.* v. *Grosscup,* 298 U. S. 226, 227. Analogies drawn from the law of trusts are inapposite and mis-

leading. The state does not collect the taxes or place them in the fund as trustee for the contributor or for any one else. It receives the moneys and expends them as an owner, charged with no other duty to a particular group of taxpayers than to members of the public generally.

The burden resting on the railroads to. show that the use of the common pot has resulted to their damage, the record must be scrutinized to see whether the burden has been borne. In that scrutiny there is no denial of a duty to inquire whether the decision of the state court, irrespective of its surface protestations, amounts in substance and reality to the denial of a federal right. *Norris* v. *Alabama*, 294 U. S. 587, 589; *Beidler* v. *South Carolina Tax Comm'n*, 282 U. S. 1, 8. There is a recognition of the duty, and an endeavor to fulfill it.

1. The trial court suggested to counsel for appellant that it would be interesting to know whether the amount that had been collected through the tax upon the railroads was in excess of the amount expended for their benefit. Counsel responded that he would not embark on that inquiry. His position was stated to be that the act was invalid on its face, in which event it would be vain to pursue the subject further. This court by its opinion has rejected that contention. The act is not invalid on its face, whether valid or invalid otherwise.

2. Explaining or at least supplementing the refusal to compare disbursements and receipts, counsel stated on the trial that there were no records available. But the contrary was clearly proved. The auditor of the Department of Public Works caused the employees of the Department to submit vouchers or slips descriptive of their services with an appropriate segregation and apportionment among the several classes of utilities. He testified on the basis of these reports, which were on file in his office, that disbursements for account of the rail-

roads were in excess by $37,833.14 of the railroads' contributions. Counsel for appellant expresses his belief that inspection and discovery of the contents of the vouchers would have yielded inadequate information. His business was to look and see.

3. The objection will not hold that the documents might be ignored for the reason that, if produced, they would be incompetent as evidence. Apart from the possibility of examining the men who made them, it is the law of the state of Washington, declared in this very case, that the slips and vouchers so filed in the course of the business of the bureau were sufficient to support the testimony of the auditor as to the conclusions to be drawn from them. Referring to that subject, the court said: "While the account kept by the auditor was not official, in the sense that of itself it was admissible in evidence, yet what the auditor did in that respect qualified him to testify as to the ultimate fact. Without further detailing the evidence, we will say that in our opinion, and in so far as there was any evidence on the subject, it preponderated against the findings made by the [trial] court as to the cost of supervising and regulating railroads."

Whether the evidence thus accepted and relied upon would be rejected by other courts either as hearsay or on other grounds is quite beside the point. The Fourteenth Amendment does not confine the states to the common law rules of evidence, however well established. *West* v. *Louisiana,* 194 U. S. 258, 262, 263; *Brown* v. *New Jersey,* 175 U. S. 172, 174, 175; *Twining* v. *New Jersey,* 211 U. S. 78, 101; *Luria* v. *United States,* 231 U. S. 9, 25. "The State is not tied down by any provision of the Federal Constitution to the practice and procedure which existed at the common law." *Brown* v. *New Jersey, supra.* The acceptance of the testimony of the auditor does not touch the privilege of confrontation in a prose-

cution for a crime. *Snyder* v. *Massachusetts,* 291 U. S. 97, 106. It does not substitute hearsay for direct testimony generally or as to every possible issue arising in a case. At most it is an enlargement of the common law rule as to entries in books of account or in public or official documents. Cf. Wigmore, Evidence, vol. 3, § 1517 *et seq;* § 1630 *et seq.*

Hearsay is competent evidence by the law of many enlightened countries. Stumberg, Guide to the Law and Legal Literature of France, pp. 148, 149; Encyclopedia of the Social Sciences, Title "Evidence"; vol. v., pp. 646, 647. Even at common law it is competent at certain times and for certain purposes, though narrowly restricted. Wigmore, Evidence, vol. 3, § 1420 *et seq.;* Thayer, A Preliminary Treatise on Evidence at the Common Law, p. 518. The range of its competence has been greatly enlarged by statutes in many of the states, as, e. g., in the administration of Workmen's Compensation Laws, and by the relaxation of ancient rules as to entries in accounts. Dodd, Administration of Workmen's Compensation, pp. 227–236; Wigmore, Evidence, Supplement, 1934, §§ 1519, 1520; Morgan and others, The Law of Evidence, p. 51; New York Civil Practice Act, § 374 a; cf. *Massachusetts Bonding & Insurance Co.* v. *Norwich Pharmacal Co.,* 18 F. (2d) 934; *Cub Fork Coal Co.* v. *Fairmont Glass Co.,* 19 F. (2d) 273; *United States* v. *Cotter,* 60 F. (2d) 689. The question may be laid aside whether a change in the law of evidence might be so radical and unjust as to work a destruction of fundamental rights and thus a denial of due process. *Brown* v. *New Jersey, supra,* p. 175. Assuming such a possibility, there is nothing in this ruling to make it a reality. If the legislature of Washington had passed a statute to the effect that vouchers in a public office, filed by the employees at the bidding of a superior, should be *prima facie* evidence of the truth of their contents, it is not open

to doubt that such a statute would be valid. It would not even involve an extreme departure from common law analogies rooted in the presumption of official regularity. What a state may do in changing the rules of evidence through the action of its legislature, it may do with equal competence through the action of its judges, for anything to the contrary in the Constitution of the United States.

4. Appellant did not discharge its burden by proving in a vague way that some of the disbursements classified by the auditor as a charge against the railroads were incidental to proceedings conducted before the Interstate Commerce Commission or elsewhere for the benefit of private shippers and were not properly a part of the expense of local regulation.

The Attorney General takes the ground that disbursements from the revolving fund, if made for that purpose, were without authority of law. If that be so, they cannot avail to invalidate the statute, though they may lay the basis for a remedy in behalf of the state or others against the officers or agents guilty of unintentional misfeasance. Aside, however, from that objection, there was no attempt by appellant to prove the amount of these or like withdrawals in even the roughest fashion. There was no suggestion, much less evidence, that they would wipe out the excess of $37,833.14 stated by the auditor. An inquiry directed to the point would have yielded in all likelihood an estimate at least approximately correct. If such inquiry was inadequate, the slips and vouchers were available for scrutiny and dissection. Examination of the auditor in connection with the documents would have shown forth the truth.

The presumption of validity which sustains an act of legislation is unbroken by the evidence.

The CHIEF JUSTICE, MR. JUSTICE BRANDEIS and MR. JUSTICE STONE join in this opinion.