THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* BROOK-LYN GARDEN APARTMENTS, INC., Appellant.*

First Department, December 1, 1939.

*Revg. 169 Misc. 610.

*Chauncey Belknap* of counsel [*James F. Curtis* and *Frank M. Darnall* with him on the brief; *Curtis, Belknap & Webb*, attorneys], for the appellant.

*Ira S. Robbins, Special Assistant Attorney-General,* of counsel [*Harold I. Cammer* with him on the brief; *John J. Bennett, Jr., Attorney-General*], for the respondent.

*Robert Szold* of counsel [*Szold & Brandwen*, attorneys], for Amalgamated Housing Corporation and Amalgamated Dwellings, Inc., as *amici curiæ*.

COHN, J. Defendant is a private limited dividend housing corporation organized in 1928 pursuant to the provisions of the State Housing Law (Laws of 1926, chap. 823). In the years 1929 and 1930 when the defendant had completed its two housing projects, the expenses incurred by the State Board of Housing for inspection, supervision and auditing of such housing companies were borne by the general public. The statute so provided from the time of the enactment of the original Housing Law in 1926 up to 1933.

By chapter 802 of the Laws of 1933 the State Housing Law was amended by the addition of a provision to section 16 thereof which authorized the State Housing Board to fix the amount of charges to be made against limited dividend housing companies whereby the Board could be reimbursed, in whole or in part, for its expenses of inspection, supervision and auditing. Pursuant to this amendment the Attorney-General in behalf of the State Board of Housing brought this action to recover from defendant a charge of $622.87 for a portion of the Board's expenses incurred during the year beginning July 1, 1934, for inspection, supervision and auditing of limited dividend housing companies. The amount of the charge was fixed in a resolution of the Board on the basis of an annual payment of one-twentieth of one per cent of $1,245,732.83, this sum representing the cost of defendant's two completed projects.

In its answer defendant does not deny any of the allegations of the complaint but sets forth four affirmative defenses. Each of these defenses alleges that in reliance on and induced by the provisions of the original State Housing Law which provided exemption from all taxes and fees payable to the State or its officers, defendant incorporated, purchased land and thereafter completed its two housing projects; that it sold to the public $525,000 of its capital stock, the purchasers of which, by subscribing, agreed to accept dividends limited to six per cent per annum cumulative; that it borrowed the sum of $690,000 on the security of a first mortgage on its property and that the mortgagee, in reliance on the tax exemption provisions

of the original Housing Law, made the loan for a period of twenty years at the interest rate of five per cent per annum. It is further alleged that over the entire period of its corporate existence defendant has been unable to pay to its stockholders more than one-half of the dividends authorized by the original State Housing Law, and the accumulated unpaid dividends as of January 1, 1937, amount to $130,000.

The first affirmative defense sets up the claim that defendant is under no liability to pay the charge imposed for the reason that the amendment of 1933 does not apply retrospectively to corporations which had completely financed and constructed their projects before the amendment had been adopted. The other defenses rest on the proposition that if the amendment is held to be applicable to defendant's projects, it violates defendant's constitutional rights by impairing the obligations of its contractual exemption and that it fails to meet the requirements of both the Federal and State Constitutions in other respects.

In section 16 of the Housing Law it is provided that the Board should fix the maximum rental per room to be charged, such maximum average rental to be determined upon the basis of actual final cost of the project so as to secure, together with all other income of the corporation, a sufficient income to meet all necessary payments. The pertinent part of this section which contains the amendment of 1933, reads:

" § 16. Control of rentals. * * * The payments to be made by such corporation shall be (a) all fixed charges, and all operating and maintenance charges and expenses which shall include *a charge to be fixed by the Board to reimburse it in whole or in part for its expenses of inspection, supervision and auditing,* taxes, assessments, insurance, amortization charges in amounts approved by the Board to amortize the mortgage indebtedness in whole or in part, depreciation charges if, when and to the extent deemed necessary by the Board; reserves, sinking funds and corporate expenses essential to operation and management of the project in amounts approved by the Board."

The amendment added the italicized words; these give rise to the litigation.

The tax exemption provision upon which defendant relies is contained in section 39 of the State Housing Law. The language of the provision has not been changed in any material respect since the enactment of the original law. It reads as follows:

" § 39. Tax exemptions. 1. Any public limited dividend housing company formed hereunder shall be exempt from the payment of any and all franchise, organization, income, mortgage recording and other taxes to the State and all fees to the State or its officers."

It is the contention of plaintiff that the " charge " imposed upon defendant is neither a " tax " nor a " fee " within the purview of the quoted section and that defendant accordingly is not exempted from its payment. We think that plaintiff's view is untenable so far as it pertains to defendant's projects which were completed prior to the adoption of the 1933 amendment to section 16 of the State Housing Law authorizing the charge for supervision expenses.

Moreover, no case has been called to our attention wherein it has been held that a charge exacted by a public board or officer to represent the cost of supervision or inspection is not a fee. On the contrary, charges imposed upon companies to reimburse the government or any of its agencies for expenses of regulation or inspection have almost uniformly been described by courts as " taxes " and " fees." (*Great Northern Railway Co.* v. *Washington,* 300 U. S. 154, 156, 170, 171; *Foote* v. *Maryland,* 232 id. 494, 504, 505; *Washington Ry. & Electric Co.* v. *District of Columbia,* 77 F. [2d] 366.) Likewise, the statutes of many States, in providing for the exaction of charges for regulation and investigation for public utilities, describe the charge as a " fee." (Ala. Code Ann. [Michie, 1928] § 9765; 1 Ark. Dig. Stat. [Pope, 1937] § 2112; 2 Cal. Gen. Laws [Deering, 1937], act 6393-d, § 1; Ga. Code [1933] § 93–210; 5 La. Gen. Stat. [Dart, 1935] § 7918; 5 Ore. Code Ann. [1930] § 61–112; Utah Rev. Stat. [Supp. 1939] § 76-3A-1; 11 Wash. Rev. Stat. Ann. [Remington, 1933] § 10417; W. Va. Code Ann. [Michie & Sublett, 1937] § 2568.)

It is a familiar rule of statutory construction that in interpreting a law, that sense should be adopted which promotes in the fullest manner the apparent policy and objects of the Legislature. (*Manhattan Co.* v. *Kaldenberg,* 165 N. Y. 1, 7; *People* v. *Fitzgerald,* 180 id. 269, 275; *People* v. *Kaye,* 212 id. 407, 411; *People ex rel. Wood* v. *Lacombe,* 99 id. 43, 49; McKinney's Cons. Laws of N. Y., vol. 1, Statutes and Statutory Construction, §§ 57, 58.) An examination of the original Housing Law discloses the legislative plan. In order to provide low cost housing for its needy citizens and to improve conditions which the statute itself (Laws of 1926, chap. 823; State Housing Law, § 2) declared to be " a menace to the health, safety, morals, welfare and reasonable comfort of the citizens of the State," the Legislature, among other things, included the exemption provision in the State Housing Law to induce people to invest in such building operations. It also provided that the dividends to be paid to stockholders of such housing projects were to be limited to six per cent cumulative (§ 33); that any excess earnings be applied to the reduction of rentals and that any surplus existing on the dissolution of the company

" shall be paid into the general fund of the State of New York " (§§ 41, 42). These provisions are all made to apply to private limited dividend housing companies by section 51 of the act. Obviously it was not the intention of the Legislature to limit the exemption provision in such a way that the investor would find the enterprise in which he risked his money for a limited return was not exempted from payment of any and all taxes to the State and all fees to the State or its officers, but might still be subject to some fee or charge of a character not then in existence and not contemplated by the statute itself but subsequently imposed after the lapse of seven years.

While section 16 does provide that the charge to be fixed by the State Housing Board to reimburse it for its expenses of supervision may be included as an operating and maintenance charge of a housing project so that, if necessary, higher rentals may be imposed to produce a sum sufficient to pay the limited dividends, the exaction is nevertheless a violation of the tax exemption statute. Even assuming that higher rentals might be obtained, though defendant's averments here show this to be unlikely, the defendant would nevertheless be prejudiced. Its limited return would be made less secure since there would be no certainty of securing the higher rentals required to meet the additional " operating and maintenance charges."

The argument of plaintiff that the charge imposed by the Board of Housing represents an exercise of the police power and hence may not be contracted away by the State, also lacks merit. In so far as the police power means the right of the Legislature to protect the health, general welfare and safety of the citizens, such right may not be contracted away. Indeed, it is upon the principle that the State acted in the exercise of its police power that the State Housing Act was sustained. (*Matter of New York City Housing Authority* v. *Muller*, 270 N. Y. 333, 340.) The Legislature, of course, might not contract away the power to supervise limited dividend housing companies, but we know of no rule which precludes a State from contracting away the power to make such companies pay for being supervised, particularly where, as here, the companies have submitted to severe limitations with respect to the making of profits.

We do not say that the amendment of 1933 is applicable to housing projects executed after the adoption of the amendment. If defendant or any other corporation chose to undertake a new building subsequent to the adoption of the amendment, it would have done so with full knowledge that the exemption provided by section 39 had been limited by the provisions of sections 14 and 16, as amended by

the act of 1933. This defendant, however, was induced to organize and to complete its operations in reliance upon the exemption tendered to it under the original Housing Law. When defendant's projects were planned and completed, section 16 and section 39 of the Housing Law, read together, gave not the slightest indication that the necessary expenses of its enterprise would include " a charge to be fixed by the Board to reimburse it in whole or in part for its expenses of inspection, supervision and auditing."

To attempt to read into the original Housing Law a curtailment of the sweeping tax exemptions therein enacted, by giving retroactive effect to the 1933 amendment, would be inequitable and unjust to those who before 1933 invested in reliance upon such exemptions. " When the State through its Legislature grants a franchise, privilege or exemption to a corporation either in the act incorporating it, or by other legislation followed by action of the corporation under or in reliance upon the grant so made, it constitutes a contract, based on a valuable consideration, the obligation of which cannot be impaired by subsequent legislation." (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Mealey,* 224 N. Y. 187, 196, 197. See, also, *Dartmouth College* v. *Woodward,* 4 Wheat. 518; *People* v. *O'Brien,* 111 N. Y. 1, 49; *New Jersey* v. *Yard,* 95 U. S. 104; *Wilmington Railroad* v. *Reid,* 80 id. [13 Wall.] 264; *City of Rochester* v. *Rochester R. Co.,* 182 N. Y. 99.)

For the foregoing reasons, we hold that the State Board of Housing is without power or authority to impose the charge upon this defendant, and that the Special Term should not have granted plaintiff judgment on the pleadings. The order and judgment should, accordingly, be reversed, with costs, and the motion denied.

MARTIN, P. J., GLENNON and UNTERMYER, JJ., concur; DORE, J., dissents and votes for affirmance.

Order and judgment reversed, with costs, and the motion denied.