93 Wn.2d 398 (1980)
609 P.2d 1375
THE STATE OF WASHINGTON, on the Relation of Burlington Northern, Inc., ET AL, Appellants,
v.
WASHINGTON UTILITIES AND TRANSPORTATION COMMISSION, ET AL, Respondents.
No. 46164.
The Supreme Court of Washington, En Banc.
April 24, 1980.
Woodrow L. Taylor, Randall B. Kester, and James E. Nelson, for appellants.
Slade Gorton, Attorney General, Robert F. Hauth, Senior Assistant, and James R. Cunningham, Assistant, for respondents.
*400 HOROWITZ, J.
This case considers the appropriateness of several charges made against the Railroad Regulatory Fee Account of the Public Service Revolving Fund for amounts expended by the State in defending and paying judgments in tort cases involving grade railroad crossing accidents.
Plaintiffs are all railroads regulated by defendant Washington Utilities and Transportation Commission (Commission). They are required to pay into the Railroad Regulatory Fee Account a percentage of their gross intrastate operating revenues to fund railroad regulation and supervision. RCW 81.24.050. The railroads applied in Thurston County Superior Court for a writ of mandate preventing the Commission from paying, and codefendant State Office of Financial Management from collecting, from the Railroad Regulatory Fee Account, the tort costs briefly described above.
The Superior Court refused to issue a writ, holding that reimbursement was mandated by RCW 4.92 and RCW 43.10 and that reimbursement was not prohibited by RCW 81.24. A review of the facts, and of the statutory provisions and constitutional principles affecting those facts, will demonstrate why we now reverse the Superior Court and issue the requested mandate.

I

FACTUAL BACKGROUND
The State has no general immunity from liability in civil cases and is legally liable for its torts. RCW 4.92. This suit arose because of the claimed responsibility of the State in four civil suits arising from fatal vehicle/train accidents at various grade railroad crossings in the state.
In two suits, judgments against the State in the total amount of $44,468.91 were entered on the basis of negotiated settlements. The judgments against the State reflected only a small percentage of the entire settlement received by the plaintiffs in those cases  larger amounts were paid by the railroads, by private individuals controlling land adjacent to the accident scenes, and by other governmental *401 entities. The settlements and judgments themselves acknowledge neither the State's negligence and liability nor the agency or department of state government responsible for the tortious conduct.
In two other suits, partial summary judgments dismissed the claims against the State. It does not appear from the record if these suits have been finally resolved as to all parties. In all four suits, the State has incurred legal expenses of $15,921.16 through the defense and settlement negotiations of lawyers in the Office of the Attorney General.
The legislature has provided special fund accounts for payment of tort judgments and legal costs. The judgments were initially paid from the Tort Claims Revolving Fund, RCW 4.92.130; the costs of legal services from the Legal Services Revolving Fund, RCW 43.10.150.
The legislature has also provided for reimbursement of these special funds in most cases from the moneys of the state department or agency whose activities caused the expenditure. RCW 4.92.170; 43.10.160, .190. There was no testimony as to how the source of reimbursement was determined in these cases, but the Office of Financial Management, which supervises the Tort Claims and Legal Services Revolving Funds, decided that the Commission was responsible for the $60,390.07 spent in these cases. The Public Service Revolving Fund, which is the general operating budget source of the Commission, RCW 80.01.080, was thereafter charged that amount.
The Commission regulates several industries, including motor carriers, electrical utilities, and steamboat companies. Because the suits giving rise to the expenditures concerned railroads, the $60,390.07 was ultimately taken from the Railroad Regulatory Fee Account of the Public Service Revolving Fund. There was no hearing, as may be had under WAC 82-16-060 by the Office of Financial Management director when more than one agency may be responsible for tort costs, to determine the appropriateness of the charges against the account.
*402 Railroads regulated by the Commission pay a percentage of their gross intrastate operating revenues into the Railroad Regulatory Fee Account to cover "the reasonable cost of supervising and regulating" the industry. RCW 81.24.050. The amount payable is limited by law to 1.5 percent; each year the Commission establishes a percentage necessary to cover regulatory costs. RCW 81.24.010. The railroads now pay 1.2 percent into the account. Each year the railroads audit and examine the Railroad Regulatory Fee Account. The $60,390.07 in charges to which the plaintiffs object were first discovered in the 1977 audit after the disbursements had been made without notice to the railroads.
Arguing that the expenses incurred by the State in defending and paying judgments in these lawsuits were not regulatory costs chargeable to the railroads, the plaintiffs applied for a writ of mandate pursuant to RCW 7.16.180 to prevent such disbursements from the Railroad Regulatory Fee Account and to recover for the account the funds already paid. The writ was refused. We granted direct review of the case to consider whether the reimbursement of the Tort Claims and Legal Services Revolving Funds from the moneys of the Railroad Regulatory Fee Account of the Public Service Revolving Fund was proper.
The State asserts that the charges made against the Railroad Regulatory Fee Account are required by the provisions for reimbursement of the Tort Claims and Legal Services Revolving Funds, and that the provisions for collection and use of the funds for railroad regulation cannot and do not prevent disbursement from the account. The railroads, however, argue that reimbursement of the funds is not always compelled, and that reimbursement from the account at any rate cannot be compelled, because the method and purpose of collecting railroad regulatory fees absolutely prohibits, as a matter of statutory and constitutional law, reimbursement of the Tort Claims and Legal Services Revolving Funds from the Railroad Regulatory Fee Account.
*403 This opinion first holds that the provisions for reimbursement of the Tort Claims and Legal Services Revolving Funds do not overrule or supersede any restrictions on the use of industry-generated regulatory fees. It then examines restrictions on the moneys in the Railroad Regulatory Fee Account that limit its use to regulatory purposes. Finally, this opinion points out that the State has not shown the tort costs at issue here to be a regulatory cost within that class of expenses properly payable from the Railroad Regulatory Fee Account.

II

REIMBURSEMENT OF TORT COSTS
The State alleges that reimbursement of the Tort Claims and Legal Services Revolving Fund is compelled by the statutes creating the funds. A review of those statutes disproves this contention.
With regard to reimbursement of the Tort Claims Revolving Fund, RCW 4.92.170 provides:
Liability for and payment of claims arising out of tortious conduct ... is declared to be a proper charge as part of the normal cost of operating the various agencies and departments of state government whose operations and activities give rise to the liability and a lawful charge against moneys appropriated or available to such agencies and departments.
Within any agency or department the charge shall be apportioned among such appropriated and other available moneys in the same proportion that the moneys finance the activity causing liability....
State agencies shall make reimbursement to the tort claims revolving fund for any payment made from it for the benefit of such agencies.
[1] The State argues that this provision requires the Commission to repay funds expended in its behalf from the Tort Claims Revolving Fund and further requires it to apportion these costs to the Railroad Regulatory Fee Account, as being the moneys that "finance the activity causing liability." But reimbursement does not seem to be *404 absolutely mandated by the legislative scheme. RCW 4.92.170 further provides:
[I]n any case where reimbursement would seriously disrupt or prevent substantial performance of the operations or activities of the state agency, the director of financial management may relieve the agency of all or a portion of the obligation to make reimbursement.
See also WAC 82-16-080, which establishes that this reimbursement may be made from nonagency funds. Thus, it is clear that repayment from agency moneys is not required if it is determined that the financial burden cannot be met by the affected agency. If the funds in the Railroad Regulatory Fee Account are otherwise made unavailable for the purpose of repayment of tort judgments, RCW 4.92 does not preclude reimbursement of the Tort Claims Revolving Fund from another source. Indeed, as noted above, RCW 4.92.170 explicitly provides for an alternative method of repayment. The director may as a practical matter be compelled to find an alternative source for repayment. Nothing prevents the legislature from appropriating funds directly to the Tort Claims Revolving Fund or to the Public Service Revolving Fund for repayment of the tort claim disbursements. Whether this would be necessary depends on the appropriateness of charging tort judgments against the State against the railroad supervision fees.
Similar analysis applies to reimbursement of the Legal Services Revolving Fund. RCW 43.10.160 provides:
The amounts to be disbursed from the legal services revolving fund ... shall be transferred thereto . .. from funds appropriated to any and all agencies for legal services or administrative expenses... Agencies operating in whole or in part from nonappropriated funds shall pay into the legal services revolving fund such funds as will fully reimburse funds appropriated to the attorney general for any legal services provided activities financed by nonappropriated funds.
The State argues that this provision requires the Commission to repay funds expended in its behalf by the Attorney *405 General from the Railroad Regulatory Fee Account, as the fund supporting the "activities financed by nonappropriated funds."
[2] RCW 43.10, unlike RCW 4.92, does not explicitly provide for payment of attorney's fees from a nonagency source when the agency is financially unable to absorb the cost. But nothing in the statutory scheme prevents direct appropriation to the fund to cover nonreimburseable expenses. If the funds in the Railroad Regulatory Fee Account are otherwise made unavailable for purpose of repayment of state attorney's fees, such appropriation, directly to the Legal Services Revolving Fund, or to the Public Service Revolving Fund for repayment of the fee disbursement, could harmonize the provisions of RCW 43.10 and RCW 81.24. See Gross v. Lynnwood, 90 Wn.2d 395, 583 P.2d 1197 (1978) (implied repeals are not favored, and whenever possible statutes will be read so that both can stand); State v. Fagalde, 85 Wn.2d 730, 539 P.2d 86 (1975) (it is court's duty to reconcile and give effect to apparently conflicting statutes). Thus, it must be determined if the charges made against the Railroad Regulatory Fee Account are justified under the provisions establishing that account, RCW 81.24. If they are not, it is also likely that those funds do not "finance the activity" causing liability and repayment from that source is inappropriate.

III

LIMITS ON USE OF REGULATORY FEES
[3] The annual fee paid by the railroads pursuant to RCW 81.24.010 is payable only to cover "the reasonable cost of supervising and regulating" the railroads. RCW 81.24.050. The legislature's clear intent that the fee use be so limited is set out in RCW 81.24.060:
It is the intent and purpose of the legislature that the several groups of public service companies shall each contribute sufficient in fees to the commission to pay the reasonable cost of regulating the several groups respectively.
*406 Such a restrictive purpose is mandated by the decision of the United States Supreme Court in Great N. Ry. v. Washington, 300 U.S. 154, 81 L.Ed. 573, 57 S.Ct. 397 (1937), in which an earlier version of RCW 81.24 was considered. In Great Northern, the Supreme Court noted that:
In the exercise of its police power the state may provide for the supervision and regulation of public utilities ... and may exact the reasonable cost of such supervision and regulation from the utilities concerned and allocate the exaction amongst the members of the affected class without violating the rule of equality imposed by the Fourteenth Amendment.
Great Northern Ry. v. Washington, supra at 159-60. However, as the Supreme Court went on to hold, the use of fees collected in this manner from the regulated industry for purposes other than supervision and regulation violated not only the equal protection clause of the Fourteenth Amendment, but also imposed an unreasonable burden on interstate commerce and did not afford the feepayers due process by unjustifiably placing a heavier tax burden on the class of fee-paying companies.
The Supreme Court in Great Northern struck down an unlimited fee collection scheme in which the fee was based only on gross intrastate revenues of the regulated companies and not also on the cost of the activities to be funded through the fee. The statutes were changed by the Washington State Legislature in 1939 to reflect the holding in Great Northern by limiting the fee to those amounts necessary for "regulation and supervision."
Thus, by both statutory provision and constitutional case law, the State's power to collect from the railroads the fees in the Railroad Regulatory Fee Account is limited to collection of those funds necessary for regulatory and supervisory purposes. The appropriateness within RCW 81.24 of repayment of Tort Claims and Legal Services Revolving Funds disbursements from the account therefore depends on whether the reimbursed expenses can properly be considered a cost of regulating the industry.

*407 IV

CLASSIFICATION OF LEGAL EXPENSE
The State must prove that the legal expenses charged to the Railroad Regulatory Fee Account are actually regulatory costs. Great Northern, supra at 162; RCW 4.92.170, 43.10.160 (reimbursement only from fund financing activity causing expense). The State first asserts that the evidence suggests that the tort costs arose because of the activities of the Commission. It then contends that as a matter of law these legal expenses must be considered costs of regulation.
[4] The State offers as proof of the culpability of the Commission in the underlying tort cases the affidavits of two assistant attorneys general assigned to those cases. The affidavits reflect the opinions of these lawyers as to which agency should have been billed for their time, based on consideration of allegations in the original complaints against the State. These affidavits reflect legal conclusions not persuasive in establishing the appropriateness of reimbursement. Cf. CR 56(e) (affidavits to set forth facts). There is no evidence as to why the Railroad Regulatory Fee Account in particular should be charged nor any description of Commission activities opening the State to liability. Examination of two facets of these documents will demonstrate the State's failure to prove a rational relationship between the expenses and the Commission's regulatory activities.
First, one affidavit reflects the assistant attorney general's view that the Highway Department and the Commission should split the cost of his services. Yet there is no indication that any fund other than the Railroad Regulatory Fee Account was charged for his services. The State wishes to rely on its lawyer's opinions in lieu of facts establishing the Commission's activities, but does not itself follow his billing advice.
Second, the other affidavit relies on a file report to establish the Commission's liability, i.e., it reports that the Commission "should have required the railroad and county to provide more adequate safeguards at the crossing..." *408 Although supervision of grade crossing protective devices is clearly an activity of the Commission, RCW 81.53, it is not funded by the Railroad Regulatory Fee Account of the Public Service Revolving Fund. The "administrative costs" of determining what grade crossing devices are to be placed and maintained at railroad crossings such as those giving rise to liability in the claims underlying these charges are to be paid from the separate Grade Crossing Protective Fund. RCW 81.53.281. This fund contains both federal funds and state moneys, partly from the Motor Vehicle Fund. But it is not funded by regulated industries through the Public Service Revolving Fund.
Thus the State clearly has not shown that the Public Service Revolving Fund finances the activity causing liability. We wish to note here that, despite the fears expressed by the attorneys general at oral argument of this case, proof of departmental responsibility need not prevent prompt settlement of meritorious tort claims or expose the State to additional liability. The Office of Financial Management has specifically provided for an administrative hearing to determine the appropriateness of reimbursement from a particular fund should some question such as the one considered here arise. WAC 82-16-060. Such a procedure, established by the office itself, could expeditiously establish responsibility through factual evidence regarding the activity causing liability for legal expenses. See also WAC 82-16-100 ("The director may direct agencies to maintain additional records to provide supporting information for administrative determinations...")
Even if the State were able to show that Commission activity gave rise to the tort costs, this would not necessarily justify the charges against the Railroad Regulatory Fee Account.
RCW 4.92.170 declares the "payment of claims arising out of tortious conduct" to be a "normal cost of operating." Attorney's fees likewise seem logically to be an operational cost. RCW 43.10.160. RCW 80.01.080 provides that "[a]ll expenses of operation of the Washington utilities and *409 transportation commission shall be payable out of the public service revolving fund." Thus, the Commission's tort claim payments and legal fees would appear to be "expenses of operation" to be paid out of the Public Service Revolving Fund.
The State goes on to argue, however, that because the Public Service Revolving Fund receives no legislative appropriation and is as a practical matter funded solely from industry-generated fees such as those in the Railroad Regulatory Fee Account, that tort costs must be a cost of regulation and supervision.
We do not agree with the State's analysis. Although all costs of supervision and regulation may be expenses of operation, it does not necessarily follow that all expenses of operation are costs of supervision and regulation. Indeed, in Great Northern, the Supreme Court explicitly cited as an example of a nonregulatory cost not transferable to the railroads the legal expense of the State in appearing before the Interstate Commerce Commission and in judicially decreeing overcharge refunds. Great Northern, supra at 158. Although these were clearly "expense of operation" they were not regulatory costs.
We need not decide whether the State's failure to regulate can ever be considered a regulatory function. Having already established that the State has not shown the liability-causing activity to be funded by the Public Service Revolving Fund, we merely note the analytical difficulties that may always preclude classification of legal expenditures benefiting a nonsupervised third party as regulatory costs chargeable to a regulated industry. Defense against tort claims and payment of tort judgments are not "regulation." Although the Commission has a broad mandate to "regulate in the public interest," RCW 80.01.040, and it does supervise a broad range of railroad activities,[1] the negligence alleged in the tort cases considered here was the *410 State's failure to regulate. It may not be reasonable to expect the industry to reimburse the State for the State's failure to adequately govern the industry's actions, particularly in the absence of proof of Commission involvement, even though the industry might be compelled to pay for additional Commission regulation that might prevent the State's liability. Regardless of whether the industry could in some circumstances be forced to reimburse the State for the State's failure to regulate, the funds of the account are not in this instance available to benefit a third person not directly regulated and not included within the Commission's regulatory power. The allowable fee covers only "reasonable" regulatory costs. In this case the State has not demonstrated that its tort case expenses were a reasonable cost of regulation.

V

ISSUANCE OF WRIT
[5] Mandamus will not lie to compel a discretionary act; the State must have a clear duty to act or refrain from acting before a writ will issue. Tacoma v. O'Brien, 85 Wn.2d 266, 534 P.2d 114 (1975); State ex rel. Craven v. Tacoma, 63 Wn.2d 23, 385 P.2d 372 (1963). However, in this case the provisions of RCW 81.24 prevent the disbursement of funds to the Tort Claims and Legal Services Revolving Funds from the Railroad Regulatory Fee Account of the Public Service Revolving Fund. The State's charge against the account was not justified or within its discretion and reimbursement of the amount is compelled. A writ of mandate *411 from this court is an appropriate remedy. Const. art. 4, § 4; RCW 7.16.160.
We must require the State to repay into the Railroad Regulatory Fee Account $60,390.07, to replace the funds transferred from the account to the Tort Claims and Legal Services Revolving Funds respectively. We must further require the State to continue to use the funds in the account only to support the reasonable costs of regulating and supervising the railroads.
It is so ordered.
UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.
NOTES
[1] The regulatory duties of the Commission are set out generally in RCW 80.01.040, which states that the Commission shall:

(2) Regulate in the public interest, as provided by the public service laws, the rates, services, facilities, and practices of all persons engaging in the transportation ... of persons or property within this state for compensation...
...
(4) Make such rules and regulations as may be necessary to carry out its other powers and duties.
Included specifically among the duties of the Commission with regard to railroads is the regulation of rates, RCW 81.28, crew size, qualifications, and working conditions, RCW 81.40, rolling and stationary equipment improvement, RCW 81.44, speed, RCW 81.48, physical connections between lines, RCW 81.52, and fair and speedy travel, RCW 81.56.